## Adams, et al. v. Farmers National Bank.

(Decided December 17, 1915.)

### Appeal from Graves Circuit Court.

1. Corporations—Mismanagement by Directors—Receiver.—Where the directors of a corporation, who own a majority of the voting

stock, are shown to have been guilty of gross mismanagement of its affairs in their own interest, and to have wrongfully misappropriated the assets of the corporation, and to have violated the provisions of the charter, a receiver for the corporation may be appointed, even though it be solvent.

2. Corporations—Mismanagement by Directors—Receiver.—Ordinarily where a receiver is appointed for a solvent corporation upon the ground of mismanagement by its directors, and the further ground that dissension existed among the stockholders, it is proper, after the old management has been eliminated and a new board of directors elected, to terminate the receivership and recommit the property to the hands of the new board of directors. But where it appears that such new board of directors have no interest in the property, and were named by the stockholders who composed the old board, and that they had some sort of contract or agreement with the members of the old board, there has not been a real change in the management of the corporation and the court may refuse to recommit the property to them.

3. Corporations—Creditors Secured by Bonds.—Where the creditors of a corporation hold its promissory notes secured by the bonds of the company pledged as collateral, they occupy a different attitude than that of mere general creditors.

4. Corporations—Remedies of Creditors.—Where the claims of creditors are secured by the mortgage bonds of the corporation pledged as collateral, and the corporation was barely solvent, and had been subjected for several years to the grossest mismanagement, they had no adequate remedy at law for the collection of their claims; for if they had undertaken to subject the large amount of the company's bonds which they held as collateral, to the payment of their debts all of the assets of the company, including that held by them as collateral, would have been greatly depreciated in value.

JAMES BREATHITT, JR., and BREATHITT, ALLENSWORTH & BREATHITT for appellants.

J. C. SPEIGHT and ROBBINS & ROBBINS for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

On the 10th of September, 1914, Rose H. Adams and others, who were the holders of preferred stock in the Mayfield Water and Light Company, and the Citizens National Life Insurance Company, a creditor of the Water and Light Company, brought this action seeking the appointment of a receiver to take charge of and operate the water and light plant.

On the 22nd of September, 1914, the plaintiffs entered their motion before the circuit judge, in chambers, and on the same day the water and light company

and its directors filed their joint answer joining in the prayer of the appointment of a receiver, and both plaintiffs and defendants asked the court on the hearing to appoint R. E. Cooper, of Hopkinsville, receiver. But pending the motion to appoint a receiver, and before it was acted upon, the First National Bank of Mayfield and other creditors of the water and light company, to the aggregate amount of more than $40,000.00, tendered their intervening petition and asked to be made parties, and also joined in the request for the appointment of a receiver, but asked the court to appoint some resident of the city of Mayfield or Graves county. The plaintiffs and defendants objected to the filing of the intervening petition by the creditors, and before the court had actel on the motion to file the same offered to withdraw their motion for the appointment of a temporary receiver, and asked the court to postpone the consideration of the matter until the next regular term of the Graves Circuit Court. To this the intervening creditors objected, and the court permitted the filing of the intervening petition and refused to permit the plaintiffs and defendants to withdraw the motion for the appointment of a receiver, and proceeded, over the objection of the original plaintiffs and defendants, to, and did, appoint J. C. Dean, of Mayfield, receiver.

At the November term of the Graves Circuit Court the plaintiffs filed an amended petition, and R. E. Cooper and others filed their petition to be made parties defendant, and the plaintiffs entered a motion to vacate the order appointing the receiver and to recommit all property and assets of the company to the hands of its officers and directors, and the court, after a hearing on oral testimony and affidavits, overruled the motion.

The original plaintiffs and defendants and R. E. Cooper and others have appealed.

The original petition charges, in substance, the directors, L. W. Key, C. P. Key, and H. H. Key, with fraudulent and reckless mismanagement of the affairs of the company; that they ran the same for their own personal benefit; that they permitted the company to become indebted in an amount largely exceeding the limit prescribed by the charter; that they had diverted $47,500.00 of the company's money, which had been realized from sale of preferred stock, and had failed to apply the same as required by the charter; that through

their fraud and mismanagement the last six years the indebtedness of the company had been increased at least $123,000.00; that they had so manipulated the books of the company that they showed the value of the company's property to be more than $100,000.00 in excess of what it really was; that the Mayfield Water and Light Company had defaulted in the payment of the semi-annual dividends on preferred stock as required by the charter, and that it had no money or assets on hand for the purpose of paying the same, and that the directors of the company did not intend to pay the next semi-annual dividend; that the company was largely indebted to various banks and individuals for borrowed money to at least the amount of $71,000.00, evidenced by promissory notes that were past due, and that the holders of these notes were insisting upon their payment and were declining to renew the same, and that the indorsers thereon were all insolvent and that the only security held by the several banks and individuals were the second mortgage bonds of the company, and that the defendant-directors were the holders of the $100,000.00 of common stock, and that none of the same was ever sold and no money was ever realized from the same by the company.

The joint answer of the Mayfield Water & Light Company and of the Keys, as directors, denies all misconduct or fraud on their part and all misapplication of funds, but does not deny the specific allegations as to the indebtedness of the company, or that the creditors were demanding payment, or that there is no money available for their payment.

But in the second paragraph the defendants allege that it would be for the best interest of all the stockholders, bondholders, creditors, and all parties concerned that a temporary receiver be appointed because of the stringent condition of the money market and the inability of the company for that reason to raise money, and because of the further fact that there were internal dissensions existing among the stockholders and the officers of the company, and that by reason of such dissension a prolonged litigation was threatened to oust the present management of the corporation, which litigation would be expensive and would result in greatly depreciating the corporate assets and securities, and would cause unsecured creditors of the company to sue

upon their demands; that the internal dissension existing in the management and affairs of the corporation was so violent that there had been held no election of officers or directors since January, 1913, and that because of such dissension it was impossible to hold such an election without such great friction as would result in the depreciation in value of the corporate assets.

The intervening petition of the creditors alleges that their debts were long past due and that the sureties thereon are all insolvent, and that they have no security for their debts except second mortgage bonds of the company held as collateral, and that there are outstanding first mortgage bonds to the amount of $125,-000.00, all of which mature in the year 1916; that the company has been managed exclusively by the Keys and their associates for their own personal benefit, and that they have been drawing as officers of the corporation large and exorbitant salaries, and have in this way consumed much of the income of the corporation which should have been applied to the satisfaction of its indebtedness; that before the dissension arose in the management of the corporation it had been wrongfully paying dividends to the preferred stockholders, and such sums should first have been applied to the payment of its indebtedness, and that the plaintiffs were now demanding that the income of the corporation still be applied to the payment of dividends on preferred stock before the payment of the general creditors.

In their amended petition the plaintiffs allege that there no longer existed the necessity for the appointment of a receiver because of the fact that since the appointment there had been a reorganization of the company, and that at a meeting of the stockholders D. B. Stanfield, H. H. Housemann, R. E. Cooper, Henry Hale, Jr., and Howard C. Griffith had been elected directors; that the old board had been entirely eliminated from the management of the company, and that the new management was entirely harmonious, and it was believed that it would be able to refinance the corporation, and that the only way this result could be brought about would be to discharge the receiver and recommit the property to the custody of the new board of directors. R. E. Cooper and the other members of the new board, in their petition, made substantially the same allegations.

In their answer to the amended petition, and to the petition of Cooper and others, the creditors alleged that all the common stock of the water and light company was held by the Keys, Charles D. Pierce, and John W. Landrum's Admr., and Katie May Hale, and that none of these stockholders ever paid anything for that stock, but that it was issued in the first place to the bondholders as a bonus; that there were outstanding first mortgage bonds of the water and light company to the amount of $113,000.00, bills payable, partly secured by first and second mortgage bonds, $87,000.00, past due interest, $6,500.00, and open accounts, $3,000.00, but that on the first of January, 1915, the receiver would have $10,000.00 to $15,000.00 to pay on this indebtedness. It is further alleged that the old board of directors only ostensibly retired from the management of the company, and transferred a few shares of their common stock to the new board of directors, and that none of the said parties paid anything therefor or agreed to do so; that two of the new board were nonresidents of this State, and two others have no knowledge or experience in the management of such companies, but were merely formally acting for the benefit of the old management to enable it to circumvent the order of the court appointing a receiver for the benefit of the creditors, alleging, in substance, that the new board is really a board of "dummy directors" selected in the interest of the old management.

The evidence on the motion to vacate the appointment of the receiver disclosed that the liabilities of the company, not including any of the stock, preferred or common, consisted of $113,000.00 in first mortgage bonds, $87,000.00 in bills payable, to secure which there was pledged as collateral $12,000.00 in first mortgage bonds not actually floated by the company, but which were pledged by it as collateral, and $75,000.00 in second mortgage bonds, none of which had been floated by the company, but which were pledged as collateral, and about $6,500.00 in past due interest, aggregating about $206,500.00.

The bookkeeper, who had been with the company only a few months when the receiver was appointed, stated that he did not know what had been the actual income of the water and light company during the last two or three years, but that in his opinion it was capa-

ble of earning a gross income of $57,000.00, judging from the rate it was then earning, and that $40,000.00, in round numbers, would cover the operating expenses, repairs, dividends and interest, but there had been no surplus on hand since he had been connected with the company. He further testified that he had gone to the company as bookkeeper in February before the appointment of the receiver in September, and that he had found the books of the company in a very badly confused condition; that there was about $11,000.00 in unpaid rents and tolls for water and light; that there had been no settlement with some of the patrons of the company for three or four years; that there was a free list to whom water and light were furnished free to the extent of about $2,000.00 annually; that since the appointment of the receiver he had paid about $2,900.00 in taxes, and that of this amount $1,400.00 was penalties which had been allowed to accumulate on past due taxes.

The evidence failed to show what disposition had been made of the $47,500.00 realized from the sale of the preferred stock, but it is certain that no part of the same was applied to the payment of the mortgage bonds as was required by the amendment to the charter, for that amendment shows that in 1908 there were only $75,000.00 in outstanding mortgage bonds. It further shows that up to a short time before the receivership dividends had been regularly paid on the the preferred stock at times when there existed outstanding general indebtedness.

H. H. Housemann, one of the newly-elected directors, testified that he was a brother-in-law of one of the Keys, and that one of the other Keys had asked him to act as a director, and that he had agreed to do so merely for the accommodation of the Keys and for their benefit; that three or four shares of the stock had been transferred to him, and that he had paid nothing for it, and had promised to pay nothing for it.

D. B. Stanfield, another one of the new directors, testified that three shares of the stock had been transferred to him but that he had paid nothing for it; that he agreed to act as a director with the undersanding that it was to carry out a contract or agreement with some parties to buy the plant and pay off all of the debts and wind the business up; that he represented some debts against the concern and was working in the interest of

all the parties, as he thought; that it was his understanding that in a very reasonable time arrangements would be made to pay the debts and make it satisfactory with everybody, and that he thought it was best for it to get out of court. There is also a stipulation in the record by which it is agreed that C. P. Key, if present, would testify that L. W. Key, C. P. Key and H. H. Key, as owners of stock, transferred to Howard C. Griffith 780 shares, and 180 shares to George Whysall, and three shares to R. E. Cooper; that nothing was paid for any of this stock, but that it was transferred by bona fide agreement.

Considerable evidence was introduced on the hearing touching the financial condition of the company, several witnesses stating that in their opinion the assets of the company were not of sufficient value to pay its indebtedness, and others expressing the opinion that they were of considerably greater value than the amount of its indebtedness. Taking into the estimate, however, the earning capacity of the plant and assuming it has an annual earning capacity of $10,000.00 or $12,000.00 net, it might be conceded, for the purposes of this case, that the corporation was solvent.

There is no contention that at the time of the appointment of the receiver, under the allegations of all pleadings then before the court, no evidence having been heard, that the court acted improperly in appointing a receiver; but it is urgently insisted for appellants that after the stockholders' meeting and a new board of directors had been elected, who were entirely harmonious with each other, and who were competent to manage the affairs of the corporation, and the old management had been entirely eliminated from the control, the corporation being solvent, there was no longer any reason for the receivership, and the court should have sustained their motion to vacate it and recommit the property to the custody and control of the new board of directors. That this, generally speaking, is a correct principle of law cannot be questioned. But the application of that principle to the facts of this case depends upon the issue made in the pleadings as to whether there was in good faith a new board of directors elected, and whether or not there was not, in fact, merely a change in the personnel of the directors and not in the real management of the corporation.

As recited above, the evidence showed that none of the new directors actually owned in good faith any stock in the company; that the shares of stock were merely transferred to them by the Keys for temporary purposes and manifestly with a view of discontinuing the receivership, and with the further purpose of giving Griffith, a financier or promoter, an opportunity to refinance or rehabilitate the company on certain lines which were not disclosed in the record, but which it is fair to assume under the circumstances was sought to be done for the benefit of the Keys. The statement in the stipulation that nothing was paid for any of the stock transferred to Griffith, Whysall and Cooper, but that it was transferred by *bona fide agreement,* is conclusive that there was some contract between the Keys and those three parties.

So that the effect of this evidence is to show that while the Keys themselves retired from the directory that they, in fact, named their own directors and had some sort of contract or agreement with them in advance, and it is conclusive from this that they were mere "dummy directors," and that the Keys would have continued to be the real managers and controllers of the company, and that there was not in good faith any change in the real management.

That a temporary receiver may be appointed even for a solvent corporation where there is gross mismanagement or fraud by the directors is well settled. Cyc. vol. 34, page 86, distinctly recognizes this rule, and says:

"And so it is held that such temporary receivership may be created where the corporation is entirely solvent, yet the corporate officers by mismanagement or fraud or by violation of the charter rights of the minority are jeopardizing the property. A stockholder may invoke and set in motion the plenary and far-reaching powers of a court of equity to investigate, strike down, and strip of its covering any act of the corporation to which he belongs, when that act is tainted with fraud, or is *ultra vires* or illegal. And it is held that the power to appoint a receiver of corporate property at the instance of stockholders is inherent in a court of equity where the corporation is fraudulently mismanaged by the officers, whereby it is in imminent danger of insolvency, or has

been rendered insolvent by reason of such mismanagement.''

High on Receivers, fourth edition, section 295-b, also recognizes this rule in the following language:

''Where, however, it appears that the officers and a majority of the stockholders of a corporation are grossly mismanaging its affairs in their own interests and are fraudulently and wrongfully misappropriating the corporate property for their individual profit, a proper case is presented for the appointment of a receiver at the instance of the minority stockholders. * * * And the relief has been granted, although it appeared that the corporation was quite solvent. * * * So where the board of directors are a majority of the stockholders and are grossly mismanaging the affairs of the corporation and are conducting the business for their own individual gain, the minority stockholders are entitled to the appointment of a receiver, although it appeared that the corporation was solvent.''

The court when it acted had all the parties and their pleadings before it, and at the time the plaintiffs and defendants united in asking the court to permit them to withdraw their motion for a receiver, the rights of the creditors had intervened, and under the circumstances, the court did not abuse its discretion in declining to permit them to withdraw their application.

Nor are the creditors merely general creditors as is argued by appellants; while they are only the holders of the promissory notes of the corporation, yet to secure the payment of those notes they have pledged as collateral the bonds of the company, and are in effect the owners of such an equity in those bonds as entitles them to a higher and greater consideration than mere general creditors.

Nor can the claim that they had an adequate remedy at law be sustained; their claims were secured by the second mortgage bonds of a corporation which, to say the most, was barely solvent, and which had been subjected to the grossest mismanagement for several years. If they had proceeded at law and undertaken to subject their collateral to the payment of their debts, and this mismanagement having in the meantime been continued, and the $87,000.00 of first and second mortgage bonds, which had been pledged as collateral, been put up at forced sale, all of the assets of the company, including their collateral, would have been greatly depreciated in

value, and the whole corporation doubtless would have collapsed. Under this situation they had no adequate remedy at law, and the chancellor wisely exercised his discretion in appointing a receiver.

Judgment affirmed.