Grant.
3g  48
180  575

# Baptist Congregation *versus* Scannel *et al.*

1. The Supreme Court have the supervision and control in equity of private corporations, and this involves the power of issuing all sorts of process necessary to effectuate that control.

2. It is not necessary in order to sustain a bill in equity under the power to supervise and control private corporations that the case falls within the class of irreparable injuries.

3. The trustees of an incorporated religious society alone can represent it in making contracts.

4. A meeting of the church members of a religious corporation and pew-holders, as such is not a meeting of the incorporated society, and it cannot instruct the trustees in their duties or assume any power over them.

*Alleghany County.* In Equity, *coram*, Mr. JUSTICE LOWRIE.

*Darragh, Shaler, Stanton* and *Kirkpatrick* for complainants.

*Flanegan, Hepburn,* and *Cochran* for respondents.

The facts sufficiently appear in the following opinion delivered August 17, 1854, by

LOWRIE, J.—This is a motion for a preliminary injunction, founded upon a bill of complaint entered by the trustees of this religious society, alleging that they have been in a disorderly and unlawful manner excluded from the possession and management of the church property, and hindered in the performance of their duties by the defendants, who are, or claim to be, members of the said society and to be acting on its behalf. The object of the bill is to settle the right of the representative parties by a final decree, and the object of this motion is to put and keep matters in the position in which they stood before the disorder commenced, and to prevent the defendants from gaining any advantage by their own wrongful acts.

It is not necessary to decide, in order to maintain this form of proceeding, that this case falls within the class of irreparable injuries, and if it did that would not give original jurisdiction to this court. But we have the supervision and control, in the equity form, of private corporations, and this involves the power of issuing all sorts of process necessary to effectuate that control.

The plaintiffs are a religious association incorporated under the act of 1791, which allows any persons, whether church members or not, to be incorporated for religious purposes, upon terms and principles declared by themselves. These terms and

principles are expressed in their charter, and are the law of their association.

Following out the free thought of the act of assembly, the society, as incorporated, consists of "church and congregation," or those who are full members of the spiritual society and those who are only pew-holders. The "church," therefore, comprises only a portion of the members of the incorporated society, and must be so regarded here. By the articles of union set out in the charter, the trustees are the representatives of the incorporated society, and hold the church property for its use, and of course subject to its directions regularly expressed. They receive the income of the incorporated society, and apply it for the maintenance of the Gospel. They alone can represent it in making contracts, and from it alone they receive their instructions, which are not expressed in the charter. A meeting of the church members, as such, is not a meeting of the incorporated society, and it cannot instruct the trustees in their duties or assume any power over them.

It is not disputed that the last general election of trustees, in November, 1853, was regularly held and conducted, and five of the complaining trustees claim title under that election. But a vacancy of two trustees is alleged to have occurred, and on the 28th day of February, 1854, two others were elected in their stead. Judging from the church records, this special election seems to have been regular, but this is disputed now. The question, however, is not important at present, for it is not denied that the two persons then chosen have acted and been regarded as trustees ever since, until the outbreak of the present difficulty, and without them the other five trustees, undeniably elected, could present this complaint.

Then what excuse have the defendants for intruding upon the trustees, and interfering with their functions? I do not inquire whether or not all the defendants participated in the act complained of, for it is not necessary in this preliminary proceeding. It is admitted that some of them committed the act of intrusion and are still maintaining their position, and the inquiry is, what justification have they?

They offer none except the resolutions of a regular church meeting, that is, a meeting of the communing members of the church, which was not and did not profess to be a meeting of the incorporated society. It was held the 29th day of July last, and nothing could be more irregular than its proceedings. If it was a corporation meeting, it could not exclude members from church membership; and if it was a mere church meeting, as it professed to be, it could not control the use of the corporation property, or direct the trustees, or create or remove any;

and yet all this and much more of the same incongruous character, was attempted to be done.

They think they are justified under the 8th article of the church discipline. But this article is the creature of the church members, and can be altered by them at pleasure. The incorporated society had no hand in making it, and cannot by it be excluded from their chartered rights.

They think that the custom of Baptist churches authorized the proceedings of the meeting alluded to. But as Baptist churches are wholly independent of each other, the customs of one or many of them can furnish very little aid in judging of those of another. Besides this, the customs of church meetings cannot take away the chartered right of the incorporated society—the customs of one portion of the society cannot, as such, deprive the other portion of its rights.

The meeting of 29th July was plainly disorderly and revolutionary. Even if it had been a meeting of the incorporated society, perhaps it could not thus have set aside the legal trustees if they refused their assent. There is no need of such a disorderly mode of obtaining their supposed rights, for there is a regular mode provided by law for compelling trustees to perform their duties to those whose interest they represent.

The proper corporation records are now in the hands of the trustees, and will remain there. We should have nothing to do with the church minute books were it not that they alone contain the original evidence of the corporate membership of those whose corporate membership depends upon the fact that they are in communion with the church. On this ground, however, the corporation has an interest in them. One of them was violently wrested, at the meeting of 29th July, from Samuel Bargesser, who, up to that time, at least, was the regular clerk of the church, and it must be restored to him, to be held and disposed of by him according to the directions of the next or any subsequent regular church meeting, and no alteration of any part of it must be allowed.

It is very plain that this congregation is divided into two parties, and that their pastor is the subject of their dispute. Of course, then, so far as their present affections and purposes are concerned, and as they are indicated by their disorderly proceedings, they have no longer one Lord, one faith and baptism, nor any other common bond of union. In a very humble sense of the parallel, some are for Paul and some for Apollos, but none for Christ. The aim of the contest is the victory of one party over the other, and not the progress of the church in Christian graces, nor its success against the kingdom of evil.

Of course, then, we must expect to see very improper means used by both parties, in order to succeed. And many indica-

[Miller *v.* Reed.]

tions of this have been referred to in the records, where persons unfavorable to the party having the majority for the time, have been excluded from church membership. When any suspicion is cast upon the motive of such proceedings they can do nothing but harm to the cause of the party conducting them. I venture this suggestion by way of advice, that is very relevant to the case, and I might perhaps venture further, were it not that the excited state of feeling indicated by these disorders cautions me that it would be useless. When this society comes to its right mind, they will take the advice of their Master, and cut off the right hand, or pluck out the right eye, or sacrifice any common interest, rather than suffer it any longer to lead them astray.

Our duty now is to correct the state of things brought about by the disorderly meeting of July 29th.

### ORDER.

August 17th, 1854.—The motion for a preliminary injunction having been argued by the counsel of both parties before the Honorable WALTER H. LOWRIE, a Judge of this court, now in full consideration thereof, it is ordered, that a preliminary injunction issue, requiring the defendants, and each of them, forthwith, to restore to the plaintiffs, as trustees of the corporation called "the First Baptist Church of the City of Pittsburg," the possession of the meeting house belonging to said corporation, and to desist and abstain from taking and holding possession thereof, and from doing any act to hinder or disturb the said trustees in the control and use thereof, until the final hearing of this cause, or the further order of this court. An indemnity bond, with approved sureties, in the sum of $500, to be first filed by plaintiff according to law.

And it is further ordered, that the church minute book be restored to the custody of Samuel Bargesser, now or late church clerk, to be held and disposed of by him according to the instructions of the regular church meetings, without any alteration of the minutes heretofore made in them.