THE ANVIL *v.* SAVERY, by next friend, *et al.*

116  321
126  52

1. Applications for receivers in all cases, and especially where the applicants are creditors of an insolvent corporation and there are charges that the persons in control of the assets of the corporation are misapplying them, are addressed to the sound discretion of the judge; and the appointment of a receiver will never be interfered with, unless it is manifest that this discretion has been abused.
2. It does not appear that the judge abused his discretion in appointing a receiver in the present case.

Argued July 1,—Decided August 9, 1902.

Receiver. Before Judge Barrow. Chatham superior court. April 11, 1902.

*Garrard & Meldrim*, for plaintiff in error.
*Travis & Edwards* and *Alexander & Hitch*, contra.

COBB, J.   Fatie May Savery, by her next friend, and Elizabeth A. Robinson brought an equitable petition against The Anvil, a fraternal mutual aid society and co-operative life-insurance company, incorporated under the laws of Georgia.    The petitioners alleged that they were creditors of the defendant.    The claim of Fatie May Savery was for $1,000, and was due to her under the terms of a benefit certificate which had been issued to her father, and which had matured upon his death in August, 1901, and it was alleged that the defendant admitted its liability to her.    The claim of Elizabeth A. Robinson consisted of a judgment rendered in the State of North Carolina, upon a benefit certificate of which she was the beneficiary, and which was for the sum of $1,000; the judgment having been rendered in February, 1902.    It was alleged that the defendant, while admitting the justice of the claims of the plaintiffs, confessed its insolvency and inability to pay the same.    It was also alleged that the defendant had attempted to

21

make a sale and transfer of its entire assets and business to the American Guild, an insurance corporation of the State of Virginia; that the officers of the defendant were no longer performing the duties of their several offices, and were refusing to collect the debts due the corporation, and there was no one to manage the funds or property of the corporation or to collect the debts due it; that the officers were preparing to dissolve the corporation so far as they could, and to go out of business, leaving its creditors unpaid, the evident intent and purpose being to place the assets of the defendant beyond the reach of its creditors and beyond the jurisdiction of the court; that there was danger of destruction or loss of the funds and property of the defendant, unless a court of equity interfered in behalf of the plaintiffs; that the assets of the defendant were charged with the payment of its debts, and there was manifest danger of loss or destruction thereof or material injury thereto, unless a receiver was appointed to take charge of and hold the same under the order of court. It is charged upon information and belief that there are numerous other outstanding claims against the defendant, that the books and papers are still in the hands of its officers in this State, that there is danger that the same will be destroyed and disposed of or placed beyond the jurisdiction of the court, and that it is necessary to proceed to collect the assets and appropriate the same to the creditors of the defendant. The prayers of the petition were, for an injunction to prevent the officers of the defendant from destroying or removing beyond the jurisdiction of the court the books, property, and assets of the defendant; that a receiver be appointed to take charge of the assets, property, and funds of the defendant, and to collect whatever may be due it from any source; that plaintiffs have judgment against the defendant for the amounts of their claims, and the funds realized from the assets and property be distributed to them and such other creditors as may hereafter be made parties to this proceeding. The petition concluded with a prayer for general relief and for process.

The defendant by its answer admitted that the claims of the plaintiffs were just, due, and unpaid, and that it was insolvent. It denied the allegations as to an attempt on its part to make a sale and transfer of its assets, and all allegations to the effect that the officers were seeking to manage the affairs of the corporation in such a way as to defeat plaintiffs in the collection of their claims. It

was admitted in the answer that an agreement had been entered into between the defendant and the American Guild, by which the former was to go out of business and the latter was to receive into its membership, upon certain terms, all of the members of the defendant, but it was averred that the purpose of the agreement was not to place the assets of the defendant beyond the reach of its creditors and beyond the jurisdiction of the court, but to so administer the same as to save for the members of the association the largest possible sum; that the only debts due by the defendant were those due to persons holding claims for death losses and to the directors of the association, who had advanced large sums out of their own means to promote the solvency of the association. It was denied that there was any danger of loss or destruction of the assets and property of the defendant; and the defendant averred its willingness to give any bond that might be required, "to properly conserve and protect the interests of any of the stockholders or parties in interest under the agreement made with the American Guild." It denied that there was any property for a receiver to take charge of, and averred that there would be nothing for a receiver to do except to collect assessments, which could better be done by the officers of the association than by a receiver. Attached to the answer was a copy of the agreement entered into between the defendant and the American Guild, from which it appeared that T. H. McMillan was appointed trustee to receive from the Guild such sums as might be collected by it and due, under the agreement, to the defendant. It appeared from the allegations in the answer that McMillan resided in this State, and that he was in possession of the books and papers that belonged to the defendant, they not having been turned over to the American Guild. At the hearing there was much evidence introduced in behalf of the plaintiffs, tending to show that there was little or no disposition on the part of the officers of the defendant or McMillan, trustee, to facilitate the plaintiffs in the collection of their claims; that, notwithstanding the insolvency of the defendant, other creditors holding claims of equal rank with the plaintiffs had been paid in full since the claims of the plaintiffs became matured demands. There was evidence in behalf of the defendant, which it was claimed showed that such amounts as were paid out by the officers were properly paid.

The judge found that there was no dishonesty or fraud in any of the transactions in which the officers of the defendant had engaged, but he also found that, notwithstanding they had acted apparently in good faith and with pure motives, they had, with a full knowledge that the corporation was insolvent and unable to pay all persons holding claims against it in full, paid to some of the persons holding claims the full amount due, and had failed and refused to pay the plaintiffs anything on their claims, although they held claims of equal rank and dignity with those that were paid.. The judge held that this misapplication of the funds of an insolvent corporation was sufficient to justify him in appointing a receiver to take charge of the books and assets of the corporation, in order that the rights of the plaintiffs might be protected. We can not say that he erred in so holding. While in his discretion he might have left the affairs of the corporation in the hands of its officers and trustees, at the same time he had a right to exercise his discretion, under the evidence before him, by holding that it was to the best interests of the plaintiffs that the affairs of this insolvent corporation should be administered through the medium of a receiver of the court. The defendant offered in its answer to give a bond to pay to the plaintiffs whatever might be due them. under the agreement between the defendant and the American Guild. We do not think the offer to give a bond of this character was sufficient to prevent the judge from appointing a receiver.. The plaintiffs were no parties to this agreement. It was made without their knowledge or consent. They are not bound to look to the American Guild directly or indirectly for the payment of their claims. They are entitled to look to the property of the defendant for payment, just as if this contract had never been entered into. If the defendant has any property, it must be used for the payment of its debts; and if there are any claims due it by way of assessments or otherwise, which would be liable to the payment of the plaintiffs' claims, these debts should be collected and the amounts thereof appropriated to the payment of the demands due the plaintiffs and other creditors. There being no relief prayed against the American Guild, the relief prayed for being simply that the assets of The Anvil be applied to the payment of its debts, the American Guild was not a necessary party to the case.

*Judgment affirmed. All the Justices concurring, except Lewis,. J., absent.*