## METZGER v. KNOX et al.

(Supreme Court, Special Term, Kings County. June 15, 1912.)

1. CORPORATIONS (§ 377*)—MANAGEMENT—AUTHORITY OF DIRECTORS.

A minority stockholder cannot complain that a subsidiary corporation is formed to dispose of part of the corporation's products, where such subsidiary company is of benefit to the corporation, and was not organized to unjustly enrich the directors or majority stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1531–1534; Dec. Dig. § 377.*]

2. CORPORATIONS (§ 308*)—OFFICERS—PAYMENT OF SALARY—PROSPECTUS.

Though the prospectus of the promoter who formed a corporation stated that the officers would receive no salary, that does not bar the board of directors from later paying them salaries.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

3. CORPORATIONS (§ 316*)—MANAGEMENT—CONTRACTS WITH OFFICERS.

The leasing of a building from an officer of a corporation is not prohibited and is valid, if fair; and hence the fact that a corporation has rented lofts from its president is no ground for a preliminary injunction or for the appointment of a receiver of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401–1415; Dec. Dig. § 316.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CONTRACTS (§ 10*)—REQUISITES—MUTUALITY.

Where one who sold his hat manufacturing establishment to a corporation agreed to purchase from it all hats which he should sell in his retail stores, with the exception of such as he had been accustomed to purchase in Europe as samples, such contract prohibited him from purchasing domestic hats; the consideration of the sale preventing the contract from being unilateral.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

5. INJUNCTION (§ 59*)—TRADE-MARKS AND TRADE-NAMES (§ 97*)—BREACH OF CONTRACT.

A hat maker sold his establishment and trade-mark to a corporation, at the same time entering into a contract to purchase from it all the domestic hats which he should sell in his retail stores, and not to use his former trade-mark. *Held* that, while an injunction would not be granted to restrain him from violating the contract of purchase, he would be enjoined from using the trade-mark.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 114–116, 128; Dec. Dig. § 59;* Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

6. CORPORATIONS (§ 553*)—RECEIVERS—APPOINTMENT.

A receiver should not be appointed on the suit of a minority stockholder who claims that the officers of the corporation are violating their trust, where it appears that the corporation is prosperous, and that the defendants are amply able to respond in damages.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

7. INJUNCTION (§ 113*)—RIGHT TO INJUNCTION—LACHES.

A minority stockholder who for a long time knew of the president's violation of his contract is not entitled to a preliminary injunction to restrain such violation, where it appeared that the suit was not instigated until the president had refused to purchase his stock or to give him employment in the corporation; his acquiescence being such laches as to bar his right to a preliminary injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 198–201; Dec. Dig. § 113.*]

Action by Charles E. Metzger, on behalf of himself and other stockholders of the Knox Hat Manufacturing Company, against Edward M. Knox, the Knox Hat Manufacturing Company, and others. On motion for a receiver and an injunction. Motion denied.

Warren Bigelow, for plaintiff.
J. Aspinwall Hodge, for defendants.

CRANE, J. This application is made by the plaintiff for the appointment of a temporary receiver of the Knox Hat Manufacturing Company and for an injunction restraining the E. M. Knox Retail Hat Company from using the Knox trade-mark on certain goods sold by it. The principal grounds upon which the plaintiff moves for this immediate relief are, first, the continuing breach of contract contained in the bill of sale of the manufacturing business from E. M. Knox to the Knox Hat Manufacturing Company; second, the waste of funds due to the improper payment to the president of the Knox Manufac-

turing Company of a salary of $25,000, and the leasing by the said company from the said president of lofts in a building owned and controlled by him; third, the injury done to the Knox Manufacturing Company's business by permitting the Cooke Hat Company to use part of the factory building and compete in the trade for the sale of hats. All of these grounds can be disposed of without much comment excepting the first. The stock of the Cooke Company is owned and controlled by the Knox Manufacturing Company, and is a scheme whereby it disposes of a certain class of its goods.

[1] Whether this be good or bad business is for the board of directors to determine, and not the courts, unless it be that it is used as a means to enrich some officer or director or majority stockholder at the expense of the minority holders, or an attempt to injure the minority holders. No such result has happened in the creation of the Cooke Company so far as the papers reveal.

[2] As to the salary of the president, while it is true that the prospectus put out by him prior to 1903 stated that the officers of the company were to receive no salary, yet it cannot be claimed that the directors of the corporation subsequently created could never pay a salary if circumstances warranted. Business conditions might arise where it would be for the best interest of all concerned that the officers should receive a salary.

[3] Likewise, the renting of the loft in the Fifth avenue building from E. M. Knox, the president, by the Knox Hat Manufacturing Company, is not a prohibited transaction. It is neither void nor voidable for the directors of a corporation to rent property from an officer of the company, although the transaction, of course, is subject to inquiry, and, like all other similar transactions, may be set aside or prevented if it be used for the purpose of defrauding minority stockholders in giving enlarged profits to an officer or director. This matter of salary and of the loft rental can, of course, be inquired into on the trial, but the papers upon this application fail to show any reason for the immediate relief asked.

[4] As to the breach of contract by the Knox Hat Manufacturing Company, the successor of Edward M. Knox, the following statement seems necessary: Prior to 1903 Edward M. Knox was the owner of a hat factory on St. Mark's avenue in the borough of Brooklyn, and also the proprietor of retail hat stores in Brooklyn and Manhattan. In that year he formed the Knox Hat Manufacturing Company, and by bill of sale executed on the 19th day of March, 1903, transferred to it the manufacturing plant, property, good will, and business, receiving therefor $1,143,517.71. The good will also included the exclusive right to the use of the Knox hat trade-mark, a very valuable asset. The bill of sale contained but one exception, which gave to Edward M. Knox the right to maintain and carry on his retail stores in Manhattan and Brooklyn, he agreeing at the time to purchase so long as he shall personally continue to carry on said stores all hats, caps, goods, and merchandise which he may require of said company at the same prices which he had theretofore been accustomed to pay for like goods manufactured at said factory. The language used in this bill of sale in-

dicates that Knox was to purchase all the goods for his retail stores which, up to that time, had been made and were being made by the hat factory. As to all other goods, he was free to buy them where he pleased. As to the Knox label or trade-mark, which was a most valuable part of the transfer to the company, Knox agreed that neither he nor his successors would use this trade-mark on any other hats than those manufactured by and purchased of the company, with the exception "of such [hats] as he had been accustomed to purchase in Europe as samples, for men's wear." This agreement was by no means a unilateral contract as the company had paid a very large sum of money, not only for the property but for the good will, and the agreement was one of the terms of the transfer. Edward M. Knox was therefore bound to live up to the letter and spirit of it.

The plaintiff claims that this agreement has been violated, as Edward M. Knox has for many years been purchasing hats and caps from other manufacturers and dealers and selling them in his retail stores under the Knox label, and that this action on his part has not only lessened the sales and business of the manufacturing company, but has had a direct tendency to lessen the value of the Knox label or trade-mark to the company. It is acknowledged on the part of the defendant Knox that he has imported certain cloth caps and also silk hats and sold them as alleged, but it is claimed by him that this is not a violation of the contract, as these goods he had previously been accustomed to purchase in Europe, and therefore came within the exception of his agreement. While he agreed to purchase all hats and caps for his retail stores manufactured by the Knox Company from that company, yet a court of equity would not enforce this agreement by injunction and restrain him from buying hats elsewhere, but it doubtlessly would and should restrain him from using the Knox label in such hats contrary to his agreement. It is not a question of label or trade-mark, but one of contract and agreement. Whether, therefore, the defendant Knox violated his contract by using the label in imported hats and caps, depends upon the reading of this exception to the contract which is above quoted. The plaintiff claims that this exception is confined to such samples as Knox purchased in Europe, while the defendant claims that he was free to purchase without limit and use the Knox label on hats which were like the samples theretofore bought in Europe. The language is subject to either interpretation without straining or unnatural construction, and the meaning of the parties and of the clause must be determined by the circumstances and nature of the business. This can be determined upon the trial, but until then the court would hardly be justified in granting a preliminary injunction when the meaning was not perfectly clear and certain. It is conceded by Mr. MacFarland in his affidavit that cloth caps were not manufactured by the Knox Manufacturing Company, so that these do not come within that portion of the agreement requiring their purchase from the factory, but Knox could not use the Knox label in them, unless the clause quoted gave him that right. It would be unreasonable to restrain the defendant from using the label in such hats and caps as he imports from Europe until it is definitely

settled upon the trial of the case to what goods and class of hats the above exception refers.

But, whatever indefiniteness there may be about the importation of hats from Europe, there is none regarding the purchase of domestic hats and caps, for as to these Edward M. Knox and the retail company which he has formed have no right whatever under the agreement to use the Knox label, unless the goods are purchased from the Knox Hat Manufacturing Company.

[5] While it is a breach of his contract to purchase domestic hats from other dealers or manufacturers than the Knox Hat Manufacturing Company, yet equity would not interfere, but leave the parties to their remedy at law. Equity will not, however, permit the defendant to use in hats so purchased a label which is the exclusive property of the Knox Hat Manufacturing Company. It is claimed on behalf of the plaintiff that the defendant retail company has been purchasing, and is now purchasing, domestic hats from other places than the Knox Company and using the label in them. If this be so, I certainly would grant an injunction if the plaintiff is in the position of one entitled to that relief.

[6] Conceding that everything the plaintiff claims is true, yet this would not be a case for the appointment of a receiver. The Knox Hat Manufacturing Company is a very prosperous corporation, paying dividends upon its preferred and common stock. The Knox Retail Hat Company is also a prosperous concern. To appoint a receiver in order to obtain restitution of any money that might have been diverted from the stockholders would be the height of injustice and cause that damage which courts are provided to prevent. A receivership is to preserve property, not to destroy it, and if I should grant the relief asked for and appoint a receiver, which always carries with it an imputation of financial stress followed by damaged reputation, greater harm would come to the plaintiff, if he be honestly interested in the success of the enterprise, than all the acts which he charges against the defendant Edward M. Knox.

[7] As I have above stated, however, I would grant the injunction preventing the use of the Knox label in domestic hats and caps not purchased of the Knox Hat Manufacturing Company if the plaintiff could insist upon this relief. But I believe him guilty of such laches that, whatever relief he may obtain upon the trial, he surely cannot be harmed by the few months' delay until then. There are 20,000 shares of the Knox Hat Manufacturing Company of which the plaintiff owns 100, so that he has one-half of 1 per cent. interest. Edward M. Knox, the president, owns the controlling interest. From 1883 to 1909 the plaintiff was in the employ of Edward M. Knox and later the Knox Hat Manufacturing Company, and knew how the business was transacted and carried on and has lately been seeking to get back into the employ of the company. In 1907 he wrote from Philadelphia to Mr. Knox that he would advertise his holdings of stock for sale unless Mr. Knox paid him $10,000 for them. In February of 1909 he wrote a letter to the board of directors of the Knox Hat Manufacturing Company, a copy of which he has annexed to the com-

plaint, calling their attention to the violation of the above agreement by Edward M. Knox. Three years or more have elapsed since this without any change in the conditions so far as this branch of the case is concerned, and now the plaintiff claims that he will be irreparably damaged by a delay of four or five months until the merits of his case can be heard in court. I do not say that mere lapse of time will always prevent preliminary relief in an equitable action, but by the lapse of time coupled with the plaintiff's very small interest and his intimate knowledge of the business methods and its details, together with his recent attitude in seeking further employment with the company, and a position and condition are created that equity should refuse preliminary relief on the ground of laches.

The motion, therefore, is denied.