ALFRED HUGO POSSELT et al.

*v.*

R. SEABURY D'ESPARD et al.

R. SEABURY D'ESPARD et al.

*v.*

FRITZ SCHULZ JUNIOR COMPANY.

[Decided June 21st, 1917.]

1. Under the peculiar circumstances of this case, *Held,* that a receiver should be appointed under general equity powers to run the business and protect the property.

2. Where a state of war exists, and it is necessary for alien enemies to appeal to a court of equity to protect their interests in a domestic corporation, all the stock of which is owned by alien enemies, the court will not by the exercise of its injunctive powers turn over sole control to the representatives of the alien enemies, but will, where there is a dispute as to who are legally directors and officers, appoint a receiver under its general equity powers to run the business and protect the property.

3. It is the duty of a court of equity during a state of war in granting relief to alien enemies, to see to it that the effect of the relief will not be to permit the transfer of property to an enemy country, or to lend aid or comfort to the enemy.

On bill, &c.

*Mr. Randolph Perkins,* for R. Seabury D'Espard and William Howard Hoople.

. *Mr. Joseph Kahrs,* for Alfred Hugo Posselt, Fritz Junior Aktien Gesselschaft and Fritz Schulz Junior Company.

*Mr. Randolph Perkins,* for the complainants.

*Mr. Joseph Kahrs,* for the defendant.

LANE, V. C. (orally).

I am going to decide the case of *D'Espard* v. *Fritz Schulz Junior Co.,* on application for appointment of a receiver.

The following facts appear: In October, 1905, the company was incorporated under the laws of this state for the purpose of manufacturing a. metal polish. The capital stock was owned wholly by a German corporation. No money was invested except that invested by the German concern. At that time the German company had a sales agreement with a company known as Raimes & Company, Ld., of London. The purpose of the incorporation of the Fritz Schulz Junior Company in this country was to avoid the necessity of transferring the manufactured product from Germany here. The Fritz Schulz Junior Company entered into a sales agreement with a company in New York, a concern incorporated by Raimes & Company, Ld., of London, for the purpose of acting in this country in the same manner as Raimes & Company, Ld., acted in Europe. The relations then existing between Raimes & Company and the German corporation were extremely friendly. The board of directors of the Fritz Schulz Junior Company consisted, I think, of three Germans and two representatives of Raimes & Company. The directors held one share of stock each, but were pure dummies.

At the outbreak of the war, in 1914, the rights of the German concern in England were by act of parliament forfeited and were

taken over by Raimes & Company of London, Ld. When there was prospect of war between this country and Germany, I think the conclusion is irresistible that the directors of the Fritz Schulz Junior Company, who were, or had been, representatives of Raimes & Company of New York, conceived the idea that in view of the absence in Germany of one or two of the German directors of consummating lawlessly in this country what is said to have been permitted by law in England. They thought that the time was opportune to take over the property of the Fritz Schulz Junior Company in this country, not, however, for the benefit of the government, but for the benefit of themselves. They attempted to do this by going to the office of the company in Lincoln, New Jersey, where the general manager, who was the resident director representing the German concern, then was, and finding him there calling a meeting of the board of directors of the Fritz Schulz Junior Company and proceeding to oust the representative of the German concern as general manager and as an officer of the company, and substituting officers of their own selection. They then directed the discontinuance of a suit which had been brought by the Fritz Schulz Junior Company against Raimes & Company in New York for breach of contract. They were defeated in this in the New York courts and a judgment was obtained for something like $8,000. That judgment has not yet been collected. The assets of Raimes & Company, I understand, have been put in such shape as to make it difficult of collection. In that situation the resident representative of the German company appealed to this court for an injunction restraining the two directors representing Raimes & Company from acting as directors and officers upon the ground that they had committed a breach of trust. The original bill prayed for the appointment of a receiver; subsequently, an amended bill was filed in which the prayer for the appointment of a receiver was omitted. I advised the injunction. The two American directors then filed a bill praying for the appointment of a receiver upon the ground that the Fritz Schulz Junior Company had no board of directors competent to act, and it is upon that bill that the present application has been made.

There is no doubt but that the company at this time has no proper board of directors. The one director who really represents the stockholders is the general manager of the concern who was ousted by the vote of the two American directors. I think that the two other German directors are now in Germany and cannot get here. That leaves the three directors in this country—one who really represents stockholders and two who really represent antagonistic interests. Because of the apparent legality on its face of the meeting of the directors which ousted the representative of the German company from control, it is necessary that this court should intervene for the protection of the interests of the company. The effect of my injunction will be practically to permit the concern to be run by one director, and he not a citizen of this country. I am unwilling to permit such a situation to exist. The appointment of a receiver is resisted by the representatives of the German interests. I think that it is not only in the interest of the German company that a receiver should be appointed, but that it is absolutely necessary for the conservation of the property of the company. It has been suggested that they would like to take their chances. They have the utmost confidence that if I enjoin the directors from acting that the one German (I think it is now said he is Austrian) director here would be able to continue business in the same manner as it has been continued. I can see that if I permit this it will only lead to endless litigation in other courts, and that it is really contrary to the interest of the German stockholders. Nor do I think that this court is justified, where a situation exists such as this in which the aid of this court must be obtained in order to protect the interests of alien enemies, and in which this court has undoubted jurisdiction to appoint a receiver, in granting the relief to the alien enemies without also going further, and seeing to it that the effect of the relief granted will not be to permit the transfer of property from this country to an alien enemy.

I will appoint the present general manager as a receiver under a bond of $25,000, and will associate with him as receiver Edwin Maxson, of Summit, under a bond of $25,000. The active management of the company until further orders will be in charge

of the first receiver mentioned. The duty of Mr. Maxson will be supervisory.

I also on my own motion will make an order consolidating these two causes. It is understood that the appointment of a receiver is not an appointment under the statute; it is a pure equity receivership and will be continued only so long as the company shall be without a board of directors competent to act, or so long as the exigencies of the occasion require. The business will be directed to be carried on. Debts as they accrue will be paid. The business of the company is not to be interfered with in the slightest degree.