McDougall et al., Appellants, *v.* Huntingdon and Broad Top R. & C. Co.

110

Argued May 14, 1928. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*J. W. McWilliams,* with him *G. A. Troutman, C. D. Fetterhoof* and *Charles S. Wesley,* for appellants.— Plaintiff bondholders, who secured judgments on their overdue bonds, possess all the rights and equities and are on the same plane as any creditor who has reduced

his claim to judgment: Com. v. R. R., 122 Pa. 306; Phila. v. R. R., 5 Pa. 127.

Judgment creditors of a railroad corporation who issued executions on their judgments and who are unable to enforce collection of their judgments by any process of execution at law, are entitled as a matter of right to the appointment of a receiver to conserve and administer the defendant's property and assets, so as to provide for the ultimate payment of their judgments: Bachrach v. R. & C. Co., Leitz v. R. & C. Co., 286 Pa. 325; Western Pa. Hospital v. Library Hall Co., 189 Pa. 269; Com. v. R. R., 122 Pa. 306; Sage v. R. R., 125 U. S. 361; Bailey v. R. R., 139 Pa. 213; Pusey & Jones v. Hanssen, 261 U. S. 491; Shields v. Pittsburgh, 252 Pa. 74; Harper v. Rubber Co., 284 Pa. 444.

Plaintiff bondholders who own matured and unpaid mortgage bonds possess a participating interest in a lien upon defendant's property created by express contract and an interest therein which entitles them to seek relief in equity.

The following cases respecting the appointment of receivers for railroad corporations are authority for the appointment of a receiver in the case at bar: Taylor v. R. R., 14 Phila. 451; Sage v. R. R., 125 U. S. 361.

*Walter Biddle Saul, Joseph R. Embery, Warren M. Henderson* and *Robert J. Dodds,* for appellee, were not heard.

OPINION BY MR. JUSTICE KEPHART, June 30, 1928:

This appeal is from an order refusing to appoint a receiver. Appellee is a common carrier, incorporated as a railroad by an act of the legislature, with capital stock of $3,371,750, a mortgage indebtedness of $2,270,500, and an unfunded debt, represented by demand notes, of $1,000,000. The road runs from Huntingdon to Mount Dallas, a distance of 45 miles, with numerous branches.

All the property of the corporation, real and personal, and its future income, are covered by mortgages, the first, dated August 8, 1854, for $406,000, the second, dated January 13, 1857, for $367,500, and the third, dated March 1, 1865, for $1,497,000. All these mortgages have matured but their payment has been extended from time to time, the last maturity date of the first and third mortgages being March 31, 1925, and of the second, February 1, 1925. Another extension to April 1, 1940, was proposed by the company. The plan was accepted by the holders of 98% of the bonds. Appellants are the holders of $21,000 of the second mortgage bonds, and $159,000 of the third mortgage bonds, and have refused to extend the maturity dates of their bonds. They have demanded payment of both principal and interest. No interest has been paid on these bonds since 1925 because the company refused payment unless the holders agreed to accept the plan for extension of the bonds, though a sum has been set aside for the payment of this interest. The bondholders extending the due date of their bonds have continuously received semiannual interest. Four of the bondholders owning third mortgage bonds, whose interest was not paid, acting under the authority of one of our cases, reduced their overdue obligations to judgment; the trial court limited the execution upon these judgments to property not encumbered by mortgage liens; this ruling was correct: Bachrach v. Huntingdon & Broad Top Mountain R. R. & C. Co., 286 Pa. 325. No such property owned by appellee was found by the sheriff.

Plaintiffs, alleging insolvency and the failure to pay matured bonds, judgments, unfunded debts, gross misconduct in refusing to pay interest due, and the inequality of the extension agreement, asked for the appointment of a receiver to conserve and administer defendant's income, property and assets so as to provide for the ultimate payment of their claims. The court below found that the capital assets exceeded the liabilities by

$241,554, and that the physical condition of the road is better today than it was some years ago. During the past years, the company has met all current liabilities as they accrued, and there is no present danger that the company will be unable to continue to operate its railroad as a common carrier by reason of the lack of current funds. While the road theoretically has suffered an operating loss, that loss has been brought about through arbitrary depreciation charges, which were unnecessary in fact. Appellee is insolvent in the sense that it is unable to discharge unsecured debts presently due and payable, and matured bonds. The unsecured creditors do not demand payment of their claims, and are content to wait for more favorable circumstances. There is no charge or evidence of fraud or mismanagement by the corporate officers. They are securing every dollar of return that is possible from the operation of the road, a sum sufficient to pay interest charges as well as all current liabilities and the upkeep of the road. There is not the slightest suggestion that any receiver selected could operate the road so as to secure larger returns, or that the road would be placed in a better position by his management. On the contrary, the road would suffer, as the present managers render their services for little or no compensation. The only complaining creditors are these bondholders, the principal plaintiff having purchased his bonds for speculative purposes. On these findings, the court below dismissed the bill. On this appeal, the questions for our consideration are, Should the rights, if any, of appellants be worked out through the medium of a receivership, or should the parties be left to other available remedies?

In many states the appointment of receivers is governed by statute. In Pennsylvania, however, we have no general statute on the subject, and the jurisdiction of our courts is governed by equitable principles. The jurisdiction of our courts generally to appoint a receiver for a corporation has not been discussed in any case,

and, since it is denied in this case and in the City Park Brewing Case, immediately following, on different grounds, a brief discussion of the subject is necessary. In an early New York case, Chancellor Kent ruled that the court had no inherent jurisdiction to sequestrate the property of a corporation by means of a receiver, or to wind up its affairs, or to control the usurpation of franchise by corporate bodies: Attorney General v. Utica Ins. Co., 2 Johns. Ch. (N. Y.) 371. The decision does not reach the appointment of receivers in other cases, and its effect has been considerably modified in later years.

It was stated by Judge SERGEANT in Com. v. Bank, 3 W. & S. 193: "The equity powers of our court......over corporations.......is general and unlimited: for by the 13th section of the Act of 16th June, 1836, the Supreme Court and the several courts of common pleas have the jurisdiction and powers of a court of chancery, as far as relates to the supervision and control of all corporations, other than those of a municipal character, and unincorporated societies or associations and partnerships. This gives the court all the powers and jurisdiction of a court of chancery over corporations, to be exercised in the ordinary mode in which a court of chancery acts, whether by bill, injunction or otherwise, as the equity of the case may require." This view has been repeatedly affirmed (Sanford v. Ry. Co., 24 Pa. 378; Big Mountain Improvement Company's App., 54 Pa. 361; Sarver's App., 81* Pa. 183; Tunis v. Passenger Ry. Co., 149 Pa. 70; Baptist Congregation v. Scannel, 3 Gr. 48), and it has never been qualified or questioned. The Constitution of 1874, in defining the scope of the jurisdiction of the several courts of common pleas, states that they shall have the powers and jurisdiction of a court of chancery, as it relates to (5) the supervision and control of all corporations, other than those of a municipal character or unincorporated societies, associations or partnerships, this to be exercised in the ordinary mode by

which that court proceeds: Bevans v. The Turnpike, 10 Pa. 174, 176.

The principles of equity are broad and comprehensive. They come into existence as the progress of civilization requires, and are not to be denied merely because a new subject is to be considered. The jurisdiction of a court of chancery to appoint a receiver has been assumed for the advancement of justice; it is founded on the inadequacy of the remedy to be obtained in the courts of ordinary jurisdiction. There are few cases that can be stated in which the court has not jurisdiction where it is essential to the justice of the case to interfere to preserve the property for a party entitled: Bainbrigge v. Baddeley, 3 Mac. & G. 413, 419, 42 Eng. Rep. 320, 323. To this may be added that, in this State, our visitorial powers over corporations would confer the authority. If our jurisdiction is unlimited with respect to corporations in all matters "as the equity of the case may require," or under equitable principles, as stated by Judge SERGEANT, it would seem that our equitable jurisdiction was placed on very solid ground.

Receivership, as an extraordinary remedy, like an injunction, is frequently termed the hand or arm of the court, indicating not only authority and power to act, but a means of preserving equality and justice to all interested. The authority of a receiver, as an executive in control, is subject to the court alone; he exercises the functions of the board of directors, managers and officers, takes possession of corporate income, property and assets, directs not only its operation, but, while in control, its policies on all lines. It is his duty to preserve the property from untimely sale, and his obligation in this respect differs from that of a sheriff or other officer commanded to execute a writ in a given time. He has power to delay action until more advantageous time is present, when it may not be necessary. He may create future liability. See Shera v. Carbon Steel Co., 245 Fed. 589.

There is nothing, however, which affects a corpora-tion with such serious consequences as does the appointment of a receiver; it is a severe, and may be termed an heroic remedy, and the conditions that call it into action should be such as would, if persisted in, ordinarily be fatal to corporate life. The appointment is a distress signal, and is immediately followed by lowering of financial credit and a general readjustment. It follows, because of the intense responsibility attached to the office, courts will not appoint receivers where there is well founded suspicion it would be followed by serious injustice or injury to the rights of all parties interested. The court, before any appointment is made, will act with the utmost caution. Receivers will not be appointed unless the chancellor is convinced the right is free from doubt (Howeth v. Coulbourne Bros. Co., 115 Md. 107, 80 Atl. 916), the loss irreparable, with no adequate legal remedy, and the relief sought is necessary. Receivers are appointed only in aid of some recognized, presently existing legal right, and will not be appointed where receivership is the sole relief asked. The appointment is discretionary with the court, and its act will not be disturbed unless there is clear abuse of sound judicial discretion: Taylor v. Decatur Mineral & Land Co., 112 Fed. 449; Georgia Portland Cement & Slate Co. v. Jackson, 139 Ga. 668, 77 S. E. 1055; First Nat. Bank of Sioux City v. Gage, 79 Ill. 207; Stokes v. Knickerbocker Inv. Co., 70 N. J. Eq. 518, 61 Atl. 736; Sedgwick v. Seward Development Co., 144 N. Y. App. Div. 455, 129 N. Y. Supp. 209; Hastings v. Tousey, 124 N. Y. App. Div. 815, 106 N. Y. Supp. 639. This rule is strictly applied where the corporation is solvent; but a receiver may be appointed for a solvent corporation in a proper case: Cunliffe v. Consumers Assn., 280 Pa. 263, 267; Deere Plow Co. v. Hershey, 287 Pa. 92, 99, and cases there cited.

Illustrating these general principles, a receivership will not be granted where it will work irreparable injury to the rights and interests of others and greater injury

will probably result from the appointment than if none were made (Feess v. Mechanics' State Bank, 84 Kan. 828, 115 Pac. 563; Metzger v. Knox, 77 N. Y. Misc. 271, 136 N. Y. Supp. 681), or where the appointment will do no good: Romare v. Broken Arrow Coal & Min. Co., 114 Fed. 194. In another case it was said that the application of one small stockholder for a receiver should be refused where the appointment would not serve the interests of the great majority of the stockholders: Dalsheimer v. Graphic Arts Co., 86 N. J. Eq. 49, 97 Atl. 497. This does not mean, however, that the rights of minority stockholders may be entirely disregarded: see Hall v. City Park Brewing Co., filed herewith, and reported immediately following this case. In this State it has been held that a receiver should be refused where the purpose of the application and the only effect of the appointment would be to hinder and delay collection of a valid claim against the corporation: Bell v. Wood, 181 Pa. 175, 180. But the federal courts appoint receivers for the very purpose of holding off creditors (Scattergood v. American Pipe & Construction Co., 247 Fed. 712; see also Fletcher, Cyclopedia of Corporations, section 5259), and we think that in many instances this is a wise rule.

The rule of caution applies only to the determination of whether there is a good reason for such relief, but once such ground exists, courts are not denied the power inherent in them to prevent a scheme of irreparable injury and wrong merely because the movers speak and act in a corporate capacity. Solvent corporations are wrecked through mismanagement, dishonest acts and other wrongs. Minority interests, often small investors, are frozen out, and business infractions are numerous under the assumption that courts are powerless to prevent their acts. Because judges proceed cautiously does not mean their hands are stayed. The court will not hesitate to make the appointment: see Cantwell v. Columbia Lead Co., 199 Mo. 1, 42, 97, S. W. 167, 179;

Fletcher, Cyclopedia of Corporations, section 5234. Courts are becoming more and more liberal in the appointment of receivers where it appears to be necessary to protect the interests of minority stockholders or creditors: Fletcher, Cyclopedia of Corporations, section 5234. This would seem to be sound and desirable, but there is danger of going too far. One court has said that there is a growing tendency to appoint receivers almost as a matter of course: Scattergood v. American Pipe & Construction Co., supra, at p. 714.

As to the limitation on the exercise of the power in cases where there is any other adequate remedy (Com. Title Ins., etc., Co. v. Seltzer, 227 Pa. 410; Forsell v. Pittsburgh & M. Copper Co., 42 Mont. 412, 113 Pac. 479; Edwards v. Bay State Gas Co. of Del., 91 Fed. 942; see also 14a C. J. 946, section 3161), the rule, while stated in general terms and never directly denied, is often disregarded, and this tendency is growing in some jurisdictions: see Fletcher, Cyclopedia of Corporation, section 5262. In any event, the mere existence of a remedy at law is not enough to prevent the appointment of a receiver; it must appear that such remedy is adequate: Adams v. Farmers' Nat. Bank, 167 Ky. 506, 130 S. W. 807; Chicago & S. E. R. Co. v. Kenney, 159 Ind. 72, 78, 62 N. E. 26, 28; Columbia Nat. Sand Dredging Co. v. Washed Bar Sand Dredging Co., 136 Fed. 710.

Subject to these general principles, there are more specific rules which, in the absence of some unusual factor, govern the action of the court in a given case. Thus it is recognized that dissension alone among the stockholders or the directors is not a ground for the appointment of a receiver (Crombie v. Order of Solon, 157 Pa. 588; Republican Mountain Silver Miners v. Brown, 58 Fed. 647; Jacobs v. Jacobs Mercantile Co., 37 Mont. 321, 96 Pac. 723; Secord v. Wheeler Gold Min. Co., 53 Wash. 620, 102 Pac. 654; Pomeroy's Equity Jurisprudence (1919 ed.) section 1545; Fletcher, Cyclopedia of Corporations, section 5244), unless it has reached a point

where it is impossible to carry on the business: Schipper Bros. C. Co. v. Economy D. Coal Co., 277 Pa. 356; D. A. Tompkins & Co. v. Catawba Mills, 82 Fed. 780; Masters v. Hartmann, 45 D. C. App. Cas. 253 (deadlock among directors); Merrifield v. Burrows, 153 Ill. App. 523 (two factions each owning same amount of stock); Bowen v. Bowen-Romer Flour Mills Corp., 114 Kan. 95, 217 Pac. 301; 14a C. J. 955; Fletcher, Cyclopedia of Corporations, section 5245. Even in such a case, the court "should not interfere by a receiver for purposes of preservation even, unless there is present danger to the interests of the stockholders consisting of a serious suspension of or interference with the conduct of the business, and a threatened depreciation of the value of the assets consequent thereon, which may be remedied by a receiver. In other words, it must appear in this, as in all other cases, that the appointment of a receiver will serve some beneficial purpose to the stockholders": Sternberg v. Wolff, 56 N. J. Eq. 389, 39 Atl. 397. The same rule should apply where the interests of creditors are involved. Another recognized ground for a receivership, closely allied to this, is where the corporation lacks governing officers: Posselt v. D'Espard, 87 N. J. Eq. 574, 101 Atl. 178; Fletcher, Cyclopedia of Corporations, section 5247.

Mismanagement or misconduct of directors, officers or majority stockholders, is ground for the appointment of a receiver where it is shown to be gross or fraudulent: Cowan v. Plate Glass Co., 184 Pa. 1; Columbia Nat. Sand Dredging Co. v. Washed Bar Sand Dredging Co., supra; Haywood v. Lincoln Lumber Co., 64 Wis. 639, 26 N. W. 184; Fletcher, Cyclopedia of Corporations, section 5446. Thus, where it is evident that the directors or majority stockholders are trying to wreck the company for their own benefit, a receiver will be appointed: Schipper Bros. C. Co. v. Economy D. Coal Co., supra; Ames v. Goldfield Merger Mines Co., 227 Fed. 292; Grout v. First Nat. Bank of Grand Junction, 48 Col.

557; 111 Pac. 556; Davis v. United States Elec. Power & Light Co., 77 Md. 35, 25 Atl. 982; Cantwell v. Columbia Lead Co., supra; Morse v. Metropolitan S. S. Co., 8 N. J. Eq. 217, 100 Atl. 219. Where mismanagement or misconduct is accompanied by misappropriation or diversion of corporate funds, there is ground for the appointment of a receiver: Treat v. Mut. Life Ins. Co., 203 Pa. 21; Morse v. Metropolitan S. S. Co., supra. But a receiver will not be appointed where the misappropriation is trivial: Jacobs v. Jacobs Mercantile Co., supra. Retention of a dividend declared is gross misconduct and misappropriation: Varnado v. Banner Cotton Oil Co., 126 La. 590, 52 So. 777. And it has also been held that the appointment of a receiver was justified upon a finding that some creditors of the corporation have been paid in full, while others holding claims of equal rank were refused payment: The Anvil v. Savery, 116 Ga. 321, 42 S. E. 495. In connection with the case just cited, it is to be noted that the assets of the corporation were insufficient to pay in full the claims of all the creditors.

Insolvency may be a factor in the appointment of a receiver, but it is not necessary, nor is it a controlling factor. It has been stated that, in the absence of a statute, insolvency alone is not always a sufficient ground for the appointment of a receiver: Worth Mfg. Co. v. Bingham, 116 Fed. 785; Thoroughgood v. Georgetown Water Co., 9 Del. Ch. 84, 77 Atl. 720; Pond v. Framingham & L. R. Co., 130 Mass. 194; Denike v. N. Y. & R. Lime & Cement Co., 80 N. Y. 599; Fletcher, Cyclopedia of Corporations, section 5250. This is the old rule. Various reasons for it are given. Some cases point out that it is the only relief sought, and is not in aid of some other equitable relief. A creditor's prayer is denied on the ground that the continuation of the business may be for the best interests of the creditors as a class (Doe v. Northwest Coal & Transportation Co., 64 Fed. 928), or that the insolvency or bankruptcy laws provide an adequate remedy: Falmouth Nat. Bank v. Cape Cod Ship

Canal Co., 166 Mass. 550, 44 N. E. 617. At the present day, courts will look closely into the affairs of the company when an application is presented on this ground, together with the preservation of the property for creditors. It will not permit the corpus of the property to be wasted or lost merely to continue a nonremunerative company. Nor will it thrust the concern into expensive bankruptcy courts, where the practice has shown greater return for creditors through receiverships. The vastly increasing number of corporations, with their membership extending into all classes, requires receivership protection by the court. But insolvency coupled with mismanagement or misappropriation of assets to the detriment of creditors is always ground for receivership: Doe v. Northwest Coal & Transportation Co., supra. The old rule stated that where insolvency, fraud and mismanagement existed, courts would not interfere by the appointment of a receiver, but would enjoin illegal acts, and direct prosecution of the officers. This is all accomplished through receivership and the faithless officers are removed from further temptation.

Insolvency that precipitates receivership and possible sale of assets must be considered in certain cases in relation to others not parties. Generally speaking, insolvency is inability to meet obligations as they mature in the ordinary course, and at the same time carry on business. It generally involves current income and property. A company and individuals, when income is insufficient to meet demand, may have abundant assets but be unable to realize on them quickly. They may be land poor. A receiver is often necessary to prevent despoiling of assets by forced sale as well as to conserve and preserve them from loss or dissipation through mismanagement, fraud or unlawful acts. Insolvency of a common carrier, such as a railroad, is of broader significance, and involves consideration of the rights of those not parties to the contract, the public. When considering a creditor's rights in the matter of the appointment

of a receiver for a railroad, where revenues of these companies are insufficient to meet maturing obligations, the public interest must be taken into account. Receivers will not be appointed unless it is certain that the charter obligations will be fulfilled, and the new managers (the receivers) will function better than the old ones. But the court will not hesitate to appoint where there is gross misconduct of the officers, as, for instance, appropriating the income to preferential payment of claims.

The reason for the importance of the public interest as an element to be considered in appointing a receiver is that the public have been encouraged to and have used this highway as a means of transportation, acquiring real estate and business in relation thereto, which would not have been done had the road not been there. As stated above, the injury to others is greater. The rights of creditors are modified by the rights of the public to a continuance of this public business. The creditors of these companies knew, before contracting, that they were dealing with a public corporation, a common carrier that had certain duties to perform for the public, which they could not be relieved of. So while such corporation may be insolvent, and unable to pay maturing obligations, whether a receiver should be appointed to sell, with a possible dismantling of property, or whether there should be a change of managers by the appointment of a receiver, is subject largely to the consideration as to whether the change will continue the public obligations, and be better able to conduct the business more successfully. See Easton Transit Co.'s Petition, 270 Pa. 136, for public rights in such companies in other matters.

If appellants are entitled to a receiver, this bill could be filed by one as a class bill, representing all bonds of that class. Appellee does not deny this position, but asserts that the mortgage contract forces appellants to proceed through the trustee: Com. v. Susq. & Del. R. R. Co., 122 Pa. 306, 321. The provisions of the bond refer

to the mortgage indenture, which states: 1. The trustee may take possession of the mortgaged property and carry on the railroad for the benefit of the bondholders upon two conditions: (a) After six months default in the payment of principal or interest; (b) Upon request of holders of bonds one-half in amount of the outstanding bonds. 2. The trustee may sell the premises for the benefit of the bondholders upon the same two conditions. 3. The mortgage further provides that nothing contained in the mortgage shall prevent or preclude the trustees "from instituting any proceeding at law or equity on this mortgage which they might deem necessary or expedient for the benefit of the holders of said mortgages." We stated in Bachrach v. Huntingdon & Broad Top Mountain R. R. & C. Co., supra, at p. 329, where the same railroad was a defendant, that by the terms of the mortgage the trustees became the repository of the title to the corporate franchises and property mortgaged in trust for all the bondholders; all the revenue from the road belonged to the trustees as well as the operating property. Where such provisions are in a mortgage, the remedy for failure to pay principal and interest is found within the terms of the mortgage: Phila. Trust Co. v. Northumberland Traction Co. et al., 258 Pa. 152; Continental, etc., Co. v. Allis-Chalmers Co., 200 Fed. 600, 606. It is only by action of a majority of the holders that the trustee may be forced to proceed, though it may act voluntarily.

Appellants' counter contention, and the one chiefly relied on, is that the proceeding is not in the interest of foreclosure; plaintiffs do not seek foreclosure, but merely wish to conserve and administer the property and its assets for the ultimate payment of the bonds, and the interest meanwhile. Does this right exist apart from the contract?

It is to be remembered, the financial condition of the company has improved under the present management, and no advantage would be gained by the appointment

of a receiver. There is no present danger of the company's inability to continue to operate its railroad, and, hence, the public interest does not require a receivership. There is no charge of mismanagement or misconduct, except failure to pay interest on plaintiffs' bonds. The president and directors are men of large business affairs, with extensive experience in matters of corporate finance, and are competent to discharge their duties, and, from this viewpoint, the creditors' interest does not demand a receivership.

There is no doubt the terms of this mortgage contract placed in the hands of the trustee the right to act in case the interest and principal of the bonds were not paid. But, even so, the minority holders, who are being unlawfully dealt with in the payment of interest, may be protected in equity. Payment of the claims of some creditors at the same time that payment was refused to other creditors holding claims of equal rank may be such misconduct and misappropriation as to justify the appointment of a receiver: The Anvil v. Savery, supra. In that case the assets were insufficient to pay the claims of all the creditors in full. Generally, a creditor must show that he has a valid claim against the corporation, and that he has exhausted his legal remedies: see Fletcher, Cyclopedia of Corporations, section 5228. A simple contract creditor is ordinarily required to reduce his claim to judgment, and to show that this judgment cannot be collected by ordinary execution process: see 14a C. J. 956.

Assuming the action of defendant's officers in withholding the interest from plaintiffs is gross misconduct, does it justify the appointment of a receiver? A bondholder is in a somewhat unique position. He is a creditor whose obligation is governed by the mortgage contract as it relates to the property covered. Under the terms of the mortgage indenture, the trustee is generally given the right to act for the bondholders as their representative to protect their interest: Com. v. Susq. &

Del. R. R. Co., supra. While this proceeding is not an attempt to foreclose the mortgage, the trustee under the mortgage was also given authority to represent the bondholders "in any proceeding on this mortgage which they might deem necessary or expedient for the benefit of the holders of said mortgage." If legal action is necessary to protect the bondholders, it is the duty of the trustee to take such action. If the trustee refuses to perform his duty, the court will compel him to act or to resign his trust: see Bradley v. Chester Val. R. R. Co., 36 Pa. 141, 154. This case is almost identical with Tyson v. Wabash R. R. Co., 8 Bissell 247.

It would be unthinkable to assert as a principle of law that, under the mortgage contract, the corporate officers could recognize the validity of a majority of the bonds, pay the interest on them regularly as it falls due, and deny to the minority payment of any interest; the door is closed to any future action to force payments to minority holders, unless the majority directs, or the trustee acts. A trustee, in performance of his trust, cannot permit the minority to be unfairly dealt with in the payment of interest or principal. He must take steps to protect their rights or suffer the consequence of removal or paying out of his own pocket. The trustee's duty is not a negative one. In accepting the position of trust to act to a given end, certain circumstances may arise where action on his part becomes necessary and can be enforced. The failure to pay interest on all bonds, while paying on some of the same kind, is such circumstance. The trustee must be given formal notice of the facts; nothing should be left to implication. Here the parties deliberately refuse to pay interest because these bondholders refuse to extend the bonds.

The door will not be closed on the rights of appellants with respect to the payment of interest. They are entitled to be treated the same as those who have extended their bonds. If this action should result in an involuntary extension of bonds, there are two reasons to

base it on, the mortgage contract and the character of the obligation. The trustee should be requested to proceed; if it declines, then this bill may be reinstated. While a receiver will not be appointed, an injunction may be awarded correcting the evil and prohibiting the continuance of the practice of paying interest to some and not to all.

As to judgments recovered on the bonds covered by the mortgage, the bondholder gains no higher status in relation to the property because his claim is reduced to judgment. It is a bond, and nothing more. Issuing an execution on the judgment did not increase its value; it is still a claim on a bond and has the same status as another bond on which no suit is brought. The right of such creditors to file a bill for the appointment of a receiver must be viewed from the standpoint of the mortgage contract. They are not like judgment creditors whose claims are based on contracts, or the like, independent of mortgage liens, and who, as judgment creditors, may, in proper cases, have receivers appointed. See Savidge on Pennsylvania Corporations, volume 2, section 1095; Cook on Corporations, 8th ed., volume 5, section 863.

Decree modified and affirmed at cost of appellants.