FIRST NATIONAL BANK OF HUNTINGDON, PA., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.·

Docket Nos. 30274, 40319.   Promulgated May 1, 1931.

*Frederick R. Gibbs, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

8

OPINION.

SMITH: The statute (section 234 (a) (5) of the Revenue Acts of 1924 and 1926) authorizes the deduction of debts ascertained to be

worthless, in whole or in part, and charged off within the taxable year. There is no question in this case as to the existence of the debt or the actual charge-off in the amounts claimed. The only issue is the ascertainment of partial worthlessness in each of the years under consideration. While " the taxing act does not require the taxpayer to be an incorrigible optimist," (*United States* v. *White Dental Mfg. Co.*, 274 U. S. 398), it does require the use of sound business judgment in the ascertainment of the worthlessness of a debt, in whole or in part, and the taxpayer must " take reasonable steps to determine that there is no probability of payment or collection and have prima facie evidence to prove that the debt has no value." (*Steele Cotton Mill Co.*, 1 B. T. A. 299.)

The petitioner submits evidence that the bank examiners directed the charge-off of the debt in question, the balance of the debt in 1926 being designated as " actually a determined loss." While we do not accept as determinative of worthlessness the reports and directions of bank examiners and the requirements of State and Federal banking departments (*Murchison National Bank*, 1 B. T. A. 617, and cases since), the evidence in this case supports their view of the Railroad's debt.

We would not be inclined to substitute our judgment as to the worthlessness of the debt in question for that of the petitioner's officers, who, by reason of the long business relations with the debtor, were in a position to and did determine its financial condition, its ability to pay, and the probability of collection. There was doubtless a perennial hope of collecting the debt, but in each year (1923 to 1926, inclusive) the petitioner's officers conferred with officials of the Railroad and then directed the charge-off of the debt in the amount claimed. The evidence supports their ascertainment of the progressive worthlessness of the Railroad's debt.

In only one of the four years of the charge-offs did the Railroad earn a profit, and that was in 1923, a year which is not in controversy. For the other years the Railroad operated at a loss. During all of this time the property and profits of the Railroad were hypothecated as security for its bonded indebtedness. Even though the Railroad managed to pay the interest on its bonds, it was unable to pay the interest on or reduce the amount of its unsecured debt, and the bonds were quoted at declining bid prices, as low as 35 per cent of par value, on the Philadelphia Stock Exchange. The Railroad's common and preferred stock also declined on that exchange, being quoted as low as one-half for the common and one for the preferred. During the years under consideration the Railroad's current liabilities were more than four times its quick assets.

In the statement attached to the deficiency notice, the respondent based the disallowance of the claimed deductions upon the receipt by the petitioner in 1926 of $12,000 as interest on the debt and the continued operation of the Railroad. The $12,000 was paid to the petitioner in consideration for joining with the majority bond-holders, trustee for the stockholders, and other unsecured creditors in the petition to dismiss the receivership. Among the facts found by the court in the receivership proceedings, *McDougal* v. *Huntingdon & Broad Top Mountain Railroad & Coal Co.*, 143 Atl. 574, were the following:

13. Said judgment creditors refused to further extend their overdue bonds, which although previously due March 1, 1895, had been extended by agreement to March 31, 1925. Upon defendant's refusal to pay said bonds, said creditors obtained their aforesaid judgments and issued attachment executions thereon naming two of the banking depositories wherein defendant maintained cash balances. Another of said judgment creditors issued an attachment execution naming the Pennsylvania Railroad Company as garnishee, and sought thereby to attach defendant's share of certain passenger, freight and car service rates which had been paid to said railroad garnishee in consideration of continuous service over the lines of the defendant and the garnishee railroad. Another of said judgment creditors issued a fieri facias on his judgment, and under it a levy was made on defendant's office furniture and equipment at defendant's executive offices. The executions on the said judgments by fieri facias and attachment were restricted to that property of defendant corporation which was not subject to the lien of defendant's third mortgage. The restriction on the executions was affirmed by the Supreme Court of Pennsylvania, and the attachments were set aside.

14. The defendant's third mortgage pledged to the mortgagee-trustee and subjected to the lien thereof the whole of defendant's property, real and personal, its corporate rights and franchises and all the tolls, issues, incomes and profits of defendant derived from the operation of its railroad. The defendant possesses no property which is not subject to the lien of said mortgage, and said judgment creditors are unable to enforce payment or satisfaction of their judgments.

The court found as a conclusion of law that the Railroad was insolvent. In the face of the financial condition of the Railroad the court held that "the continued operation of * * * [the] railroad intact and as a going concern is required in the public interest for those communities it now serves." Thus it is apparent that it would have been futile for the petitioner to have sued the Railroad on the debt here in question.

The petitioner's ascertainment of worthlessness "must be viewed in the light of the surrounding facts and circumstances, which must be such as to cause a reasonably prudent business man to conclude that the debt is worthless to the extent so ascertained. A remote hope of ultimate salvage is not sufficient to deny a deduction."

*Howard McCutcheon*, 18 B. T. A. 834, 838. The circumstances of this case support the petitioner's claim and show that the respondent erred in disallowing the deductions in question. The deficiencies should be recomputed accordingly. *Porter* v. *United States*, 27 Fed. (2d) 882; *Sherman & Bryan* v. *Blair*, 35 Fed. (2d) 713; *Jones* v. *Commissioner of Internal Revenue*, 38 Fed. (2d) 550; *Raleigh Smokeless Fuel Co.*, 6 B. T. A. 381; *American Warehouse Co.*, 19 B. T. A. 8; *Western Bank & Trust Co.*, 19 B. T. A. 401; and *Loritan Investment Co.*, 21 B. T. A. 1412.

*Judgment will be entered under Rule 50.*