Ervin **HOHENSEE** et al., Plaintiffs,

v.

Freida **GRIER** et al., Defendants.

Civ. No. 71-209.

United States District Court,
M. D. Pennsylvania.

April 11, 1974.

Ervin Hohensee, pro se.

Thelma Tompkins, pro se.

Alma Arzoo, pro se.

John C. Walsh, Carbondale, Pa., William T. Malone, Robert P. Browning, William J. Purcell, Leo A. Southard, Scranton, Pa., for defendants.

## OPINION

MUIR, District Judge.

Ervin Hohensee and his sisters, Thelma Tompkins and Alma Arzoo, filed this pro se complaint seeking damages, injunctions and declaratory relief against the named Defendants who have allegedly deprived Plaintiffs of various property and other constitutional rights. The complaint originally asserted jurisdiction under the Civil Rights Act, 42 U.S. C. § 1983 and 28 U.S.C. § 1343. Subsequently, Plaintiffs were permitted to amend the complaint to assert diversity of citizenship as an alternative jurisdictional ground. By Opinion and Order dated April 5, 1974, the Court found that diversity of citizenship did not exist between Ervin Hohensee and the Defendants. No finding was made as to diversity between Plaintiffs Tompkins and Arzoo and the Defendants. Also by Order dated April 5, 1974, as modified by order # 1 dated April 10, 1974, the Court granted to Defendants summary judgment as to all but two issues raised in the complaint. This Opinion is in support of the Order granting partial summary judgment.

The facts and issues involved in this action are complex and have for nearly a decade been the subject of extensive litigation in the state and federal courts. A background of the facts and previous litigation is necessary for an understanding of the issues here presented. The following factual summary has been compiled from the complaint, the uncontested portions of affidavits, and from opinions and orders of the following courts:

The Court of Common Pleas of Lackawanna County, Pennsylvania

The Pennsylvania Supreme Court

The U.S. District Court for the Middle District of Pennsylvania

The U.S. District Court for the Eastern District of Virginia

Adolph Hohensee, the deceased brother of the three Plaintiffs and husband of Defendant Freida Grier, was at one time president and majority shareholder of Defendant Scientific Living, Inc. (Scientific). Among the assets of Scientific is or was a valuable tract of land of approximately 1,000 acres in Jermyn, Pennsylvania, referred to in the pleadings as Hohensee Park. The ownership of Hohensee Park is the central issue in this and in previous court actions. Plaintiff Ervin Hohensee has consistently claimed that he is the owner of Hohensee Park. The cast of characters is completed as follows: Defendant Leo Southard is the administrator d. b. n. c. t. a. of the estate of Adolph Hohensee. Defendant William Malone is the attorney for and Defendant William Purcell is the president of Scientific. Plaintiffs allege that these individuals are "imposters" by virtue of the fact that Plaintiff Ervin Hohensee is the majority stockholder and president of Scientific. Defendant William Bradican is the court-appointed receiver of Scientific. Defendant First National Bank of Jermyn, Pennsylvania, of which Defendant Leo Moskovitz is president, was the holder of an $80,000.00 mortgage purportedly covering all or part of Hohensee Park.

Adolph Hohensee died on October 4, 1967, and by will dated February 24, 1967, devised and bequeathed his residuary state as follows: one-eighth to Plaintiff Thelma Tompkins, one-eighth to Plaintiff Alma Arzoo, one-fourth to his daughter, Virginia Beadle, and the balance to his daughter Euphemia Hohensee. Plainfiff Ervin Hohensee was bequeathed one dollar. Thelma Tompkins, Alma Arzoo, and Virginia Beadle were nominated and later qualified as executrices of the estate. According to the inventory filed by Thelma Tompkins and Alma Arzoo, the estate included 4,382 of the 5,000 authorized shares of Scientific. On July 29, 1969, the Court of Common Pleas of Lackawanna County, Orphans' Court Division, entered an order accepting the resignation of Virginia Beadle as co-executrix. On August 1, 1969, the same court removed Alma Arzoo and Thelma Tompkins as

co-executrices in the best interests of the estate because of a demonstrated conflict of interest, and appointed Defendant Southard as administrator d. b. n. c. t. a. The decree removing Alma Arzoo and Thelma Tompkins was affirmed by the Supreme Court of Pennsylvania. Scientific Living, Inc. v. Hohensee, 440 Pa. 280, 270 A.2d 216 (1970).

Prior to Adolph Hohensee's death in 1967, litigation over the ownership of Hohensee Park had already begun. Besides Scientific, at least two individuals claimed title. On February 14, 1963, Gene Basalyga, an officer of Scientific, recorded a deed conveying to himself all of the real property of Scientific. On February 25, 1963, Plaintiff Ervin Hohensee recorded two deeds conveying to himself all of the real property of Scientific. Several proceedings were instituted by the two individual claimants seeking to declare the deeds of the other fraudulent and void. The final outcome of the proceedings are unclear from the record before me. In 1964, Scientific filed an action against Gene Basalyga seeking to declare the latter's deed fraudulent and void. Scientific Living, Inc. v. Basalyga, Court of Common Pleas of Lackawanna County in Equity, No. 9, September Term, 1964. In an opinion and order dated December 31, 1965, the court found that the deed from Scientific to Gene Basalyga was fraudulent and void. The decision was affirmed by the Supreme Court of Pennsylvania. Scientific Living, Inc. v. Basalyga, 424 Pa. 637, 227 A.2d 498 (1967).

Scientific brought a similar action against Plaintiff Ervin Hohensee, Court of Common Pleas of Lackawanna County in Equity, No. 16 September Term, 1965. On December 27, 1965, judgment was entered against Hohensee for failure to file an answer. On that same day, Hohensee removed the case to this Court, and this Court remanded the action to the state court on August 12, 1966. A final decree was entered against Hohensee by the state court on September 16, 1966. On appeal, the Supreme Court of Pennsylvania held that the final decree was entered prematurely and reversed. Scientific Living, Inc. v. Hohensee, 424 Pa. 360, 227 A.2d 815 (1967). Following a trial, the Chancellor decreed that the deeds from Scientific to Hohensee were fraudulent and void. The final decree, entered December 27, 1968, was affirmed in an Opinion by the Supreme Court of Pennsylvania. Scientific Living, Inc. v. Hohensee, 440 Pa. 280, 270 A.2d 216 (1970).

In the meantime, while the above litigation was pending, Ervin Hohensee filed an action against Scientific in the United States District Court for the Eastern District of Virginia, Civil Action No. 4972-A, seeking to establish his title and right to possession to Hohensee Park. Service was effected upon Thelma Tompkins, holding herself out as secretary-treasurer of Scientific while she was in the District of Columbia. Scientific was represented by counsel from the District of Columbia who was not counsel for Scientific in the proceedings brought by that company against Ervin Hohensee in the Pennsylvania state courts. Upon representations by Thelma Tompkins and Alma Arzoo, purporting to act on behalf of Scientific, that Scientific acknowledged the validity of Hohensee's title and right to possession to the land, the District Court granted Hohensee's motion for judgment on the pleadings. Judgment was entered on December 17, 1968, in favor of Hohensee. Subsequently, when the facts surrounding the granting of Hohensee's motion were brought to the attention of the District Court on Scientific's motion to vacate the order for fraud, the Court stated:

"This Court being satisfied that Ervin Hohensee willfully withheld and misrepresented material facts to this Court when he presented the order of December 17, 1968, said order is hereby vacated and set aside and held for naught having been obtained by fraud perpetrated against this Court.

. . . [T]his suit is dismissed at the cost of the plaintiff."

Hohensee v. Scientific Living, Inc., Civil Action No. 4972–A (E.D.Va. filed February 25, 1970).

By virtue of his office as administrator d. b. n. c. t. a. of the estate of Adolph Hohensee, Defendant Southard had assumed possession and control of the stock of Scientific belonging to the estate and had formally removed Alma Arzoo and Thelma Tompkins as officers and directors of Scientific. Defendant Purcell was elected president of Scientific in August, 1969.

Following Adolph Hohensee's death, and until January, 1971, Plaintiffs Ervin Hohensee, Alma Arzoo, and Thelma Tompkins were in possession of Hohensee Park and collected rents therefrom, despite the order of the Court of Common Pleas of Lackawanna County enjoining Ervin Hohensee from in any way asserting title adverse to Scientific's interest. In April, 1970, Scientific filed an action, Scientific Living, Inc. v. Hohensee, Court of Common Pleas of Lackawanna County in Equity, No. 4 May Term, 1970, requesting the Court to issue a rule to show cause why Ervin Hohensee should not be held in contempt of court. Action on this matter by the lower court was postponed pending receipt of the Pennsylvania Supreme Court's order affirming the decree that Ervin Hohensee's deeds were fraudulent and void. On August 24, 1970, Alma Arzoo and Thelma Tompkins, purporting to act on behalf of Scientific, executed a deed conveying all of the real estate of Scientific to Ervin Hohensee. When this was discovered, Defendant Southard filed an application for the appointment of a receiver for Scientific and for an injunction against Hohensee, Arzoo and Tompkins. Southard v. Scientific Living, Inc., et al., Court of Common Pleas of Lackawanna County in Equity, No. 9 November Term, 1970. By Order dated December 3, 1970, Defendant William Bradican was appointed Temporary Receiver of Scientific and the Plaintiffs herein were temporarily enjoined from interfering with the assets of Scientific and ordered to turn over the assets to the receiver. A hearing date was set to determine whether the appointment of the receiver should be made permanent. On November 20, 1970, Ervin Hohensee filed a petition to set aside the judgment declaring his 1963 deeds fraudulent and void.

Hearings on these various matters were held on December 8, 14, 21, 28, 1970, and January 29, 1971. The court sitting en banc denied Hohensee's petition to set aside the judgment, found Hohensee to be in contempt of court, and made permanent the appointment of the receiver of Scientific and the injunctions against the Plaintiffs herein. These and other orders were appealed to and affirmed by the Supreme Court of Pennsylvania on December 20, 1971. Scientific Living, Inc. v. Hohensee, 445 Pa. 595, 285 A.2d 865 (1971).

In 1969, Ervin Hohensee filed an action in this Court against Defendant Freida Grier for damages and an accounting contending that he was the owner of Hohensee Park. Chief Judge Michael H. Sheridan granted Grier's motion for summary judgment on March 30, 1972, and in a supporting opinion concluded that the question of ownership of Hohensee Park had been settled by the Pennsylvania Courts. Hohensee v. Grier, No. 69–157, Civil (M.D.Pa. filed July 31, 1973). Apparently, there are several other legal actions involved in this tangled affair, but the Court is unable to unravel the details from the record before it.

Defendants Leo Moskovitz and First National Bank of Jermyn (the Bank) entered the picture as follows: On November 14, 1962, the Bank lent to Crusade of Divine Living, Inc. (Crusade), a Florida corporation doing business in Pennsylvania, the sum of $80,000, which loan was secured by a mortgage executed by Adolph Hohensee, President, and attested to by Freida Hohensee, now Freida Grier, Secretary. The mortgage described lands which make up all or part of Hohensee Park. Counsel for the borrower, Pearson M. Judd, certified to

the bank that Crusade of Divine Living, Inc. had good title to the land.

The loan being in default, the Bank entered judgment on the bond accompanying the mortgage against Crusade. It was then learned that Crusade did not have title to the land described in the mortgage, whereupon two actions were filed by the bank in the Court of Common Pleas of Lackawanna County: (1) an action in Equity, No. 14 September Term, 1966, against Crusade, Scientific, Adolph Hohensee, Freida Hohensee, now Freida Grier, Mildred Hohensee, Gene Basalyga, John J. Kozik and Ervin Hohensee, being all of the persons having any interest, real or apparent, in the subject real estate, to enjoin further conveyance of the land, to set aside alleged fraudulent conveyances, and for an order directing the conveyance of the real estate to the Bank, and (2) an Assumpsit Action against P. M. Judd, No. 564 September Term, 1968, on the certificate of title given by him to the Bank. This later action was settled for $80,000 with the St. Paul Fire and Marine Insurance Company, the liability carrier for P. M. Judd, whereupon the note, bond and mortgage were assigned to the Insurance Company which intervened as a party plaintiff in the equity action.

Against this factual background, Plaintiffs filed this complaint alleging several deprivations of constitutional rights by the Defendants. The complaint contains many irrelevancies and conclusory statements unsupported by factual allegations. The Court has attempted to unravel and comprehend the various claims asserted. Each count of the complaint, and the law applicable thereto, will be discussed *seriatim*.

## I.

Count I contains the major portions of the Plaintiffs' claims. The primary claim is that there exists a conspiracy involving Defendant Bradican, the state court-appointed receiver of Scientific, and other named Defendants, to deprive Ervin Hohensee of his legal right to Hohensee Park. Thus, Plaintiffs contend that they were wrongfully evicted from the property involved, that Defendant Grier is a squatter on the property, and that Defendants are damaging the property to the detriment of Ervin Hohensee. Plaintiffs also contend that the $80,000 loan from Defendant First National Bank of Jermyn and mortgage on the property were fraudulently obtained. Plaintiff Hohensee also contends that he was unconstitutionally incarcerated at the instance of the Defendants from January 29, 1971 to March 3, 1971, during which time Defendants stole his personal property, interfered with his access to the courts, and subjected him to torture. Plaintiffs request an injunction against Defendants asserting any title to or control over Hohensee Park, an order compelling Defendants to return all real and personal property belonging to Plaintiffs, and compensatory and punitive damages. Throughout Count I it is alleged that Ervin Hohensee is owner of 4,457 shares of the 4,479 outstanding shares of Scientific common stock.

Having grounded their claims on the Civil Rights Act, 42 U.S.C. § 1983, Plaintiffs must show a deprivation of constitutional rights by persons acting under color of state law. The deprivation of property rights is a proper constitutional claim under the Civil Rights Act. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). It must next be determined whether the requisite "state action" has been pleaded. The complaint alleges that Defendant Bradican acted under color of state law and that the other Defendants conspired with Bradican to commit most of the illegal acts. A suit may be brought against private citizens under the Civil Rights Act if it is alleged that a conspiracy existed between the private individuals and one who acted under color of state law Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, whether "state action" is present depends upon whether a state court-ap-

pointed receiver of a corporation acts under color of state law. There is no Pennsylvania statute governing the appointment of receivers, but it has long been recognized that under certain extraordinary circumstances a court may exercise its equitable jurisdiction to appoint a receiver.

"Receivership, as an extraordinary remedy, like an injunction, is frequently termed the hand or arm of the court, indicating not only authority and power to act, but a means of preserving equality and justice to all interested. The authority of a receiver, as an executive in control, is subject to the court alone; he exercises the functions of the board of directors, managers and officers, takes possession of corporate income, property and assets, directs not only its operation, but, while in control, its policies on all lines."

McDougall v. Huntingdon and Broad Top R. & C. Co., 294 Pa. 108, 116, 143 A. 574, 577 (1928). State action includes "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . ." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1940). In my view, this concept of state action would include the actions of a receiver appointed by a state court. Of course, as to those of Plaintiffs' claims not alleging a conspiracy between Defendant Bradican and other Defendants, and to those claims involving actions prior to the December ·3, 1970 appointment of Bradican as temporary receiver of Scientific, the required state action is absent.

▪ Despite the fact that Plaintiffs have alleged a deprivation of constitutional rights by persons acting under color of state law, Plaintiff Hohensee cannot in this action assert his ownership to the real property in issue. The doctrine of res judicata is properly applicable so that the validity of his 1963 recorded deeds to Hohensee Park is governed by the prior judgment of the state courts declaring those deeds fraudulent and void. See Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). In a previous action in this Court wherein Ervin Hohensee sought to establish his ownership of Hohensee Park, Chief Judge Michael H. Sheridan granted summary judgment "because the highest court in Pennsylvania has decreed his deeds are void." Hohensee v. Grier, No. 69–157 Civil (M.D.Pa., filed July 31, 1973).

▪ Plaintiffs attempt to negate the res judicata effect of the prior judgments by alleging that they were procured by fraud. For the most part, the complaint charges fraud in broad and conclusory language. In a counter-affidavit of Ervin Hohensee (Doc. #272) it is stated:

"The Defendants who are engaged in a colossal conspiracy . . . caused some courts to enter an outrageous, fraudulent chain of judgments procured by defendants' obstruction of justice by the use of bribery, massive reckless perjury, terror, mayhem, murder and a plethora of other organized crimes in said . . . conspiracy."

Specific facts linking such "organized crimes" to the procurement of the judgment in question are, for the most part, lacking. Such conclusory allegations without supporting facts are insufficient. See Esser v. Weller, 467 F.2d 949 (3d Cir. 1972); Kauffman v. Moss, 420 F.2d 1270 (3d Cir. 1970). Plaintiffs have, however, alleged in Count I, ¶ 10 of the complaint that

"Freida Grier falsely testified at the trial in Scientific Living, Inc. v. Ervin Hohensee, Equity No. 16, September 1965, on or about March 5, 1968, that Ervin Hohensee fraudulently obtained the deeds from her, on which perjured testimony the court grounded its judgment in that case against Ervin Hohensee."

While at one time there was some doubt as to whether perjury was the kind of

fraud which could vitiate a prior judgment, compare United States v. Throckmorton, 8 Otto 61, 98 U.S. 61, 25 L.Ed. 93 (1878) with Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891), the Third Circuit has been in the vanguard in settling on the principle that perjury could be the basis for equitable relief from judgments. Publicker v. Shallcross, 106 F.2d 949 (3d Cir. 1939). However, I do not read *Publicker* as establishing a hard and fast rule. In that case, the alleged perjury was committed before a court-appointed special master in a hearing characterized as non-adversary by the court, and it was apparent that the parties to the proceeding were unaware that perjury was being committed. In other words, something more than mere perjury is required to give relief from a final judgment. The present standard was perhaps best stated by Judge (now U. S. Supreme Court Justice) Brennan for the New Jersey Supreme Court:

" . . . a court may not set aside a final judgment merely because some testimony is perjured. All perjury is an affront to the dignity of the Court and to the integrity of the judicial process, but the law is not without other effective means to punish the perpetrator of the crime . . . . Perjured testimony that warrants disturbance of a final judgment must be shown by clear, convincing and satisfactory evidence to have been, not false merely, but to have been wilfully and purposely falsely given, and to have been material to the issues tried and not merely cumulative but probably to have controlled the result. Further, a party seeking to be relieved from the judgment must show that the fact of the falsity of the testimony could not have been discovered by reasonable diligence in time to offset it at the trial . . . ."

Shammas v. Shammas, 9 N.J. 321, 88 A. 2d 204, 208 (1952). See generally, Wright and Miller Federal Practice and Procedure § 2861. Plaintiffs' broad allegations of perjury are insufficient to warrant the setting aside of the state court judgments. Furthermore, Plaintiff Hohensee has demonstrated a keen awareness of his version of the facts in this case. It is almost inconceivable that Defendant Grier's alleged perjury, which involved matters of which Hohensee apparently had personal knowledge, could not have been controverted at trial. The Plaintiffs have had their day in court, and a subsequent motion to vacate the judgment was denied by the lower state court. Both of these decisions were affirmed by the Supreme Court of Pennsylvania, 440 Pa. 280, 270 A.2d 216 (1970); 445 Pa. 595, 285 A.2d 865 (1971). Plaintiffs' allegations of fraud in this case do not overcome the desirability of finality which is the basis of the *res judicata* doctrine.

Plaintiff Ervin Hohensee also claims ownership of Hohensee Park by virtue of the August 24, 1970 deed to him from Scientific. The state courts have apparently resolved this issue by the appointment of the receiver of Scientific and the order enjoining Hohensee from exercising any rights consistent with ownership of Hohensee Park under that deed. And Plaintiffs' claim that Ervin Hohensee is the majority stockholder of Scientific is in effect an objection to the appointment of the receiver. The permanent appointment of the receiver was made only after a full hearing, and this decision, too, was affirmed by the Supreme Court of Pennsylvania. 445 Pa. 595, 285 A.2d 865 (1971). Thus, Hohensee is collaterally estopped from asserting in this action his ownership of the property under the 1970 deed or his controlling ownership of Scientific.

There is another reason why the Court will not consider Plaintiffs' claims of ownership of Hohensee Park and of the majority of Scientific stock. The state court has assumed jurisdiction over these assets by way of Scientific's receivership and the administration of the estate of Adolph Hohensee. Federal courts should decline to interfere with

property over which a competent state court has assumed jurisdiction. Grace v. Grace, 394 F.2d 127 (2d Cir. 1968) (trust estate); Jacobs v. DeShetler, 465 F.2d 840 (6th Cir. 1972) (receivership). See Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

The Court is without jurisdiction to consider Plaintiffs' allegations that the Defendant Bank and its president, Defendant Moskovitz, improperly lent $80,000 to Crusade of Divine Living, Inc., obtained a mortgage on Hohensee Park, and then, in conspiracy with Defendant Grier, included Plaintiff Hohensee as a Defendant in the suit to set aside an alleged fraudulent conveyance. These actions occurred long before Defendant Bradican was appointed receiver, and therefore, the requisite state action is missing. And since the Court is precluded from considering Hohensee's allegation that he owns the land, he lacks standing to assert his claim that Defendant Bradican conspired with Defendant Grier to pay off the $80,000 loan out of funds Bradican expected to realize from the fraudulent sale of the real estate.

With reference to Count I, summary judgment has been granted as to all paragraphs except 35, 36, and 37. In those three paragraphs, Plaintiff Hohensee alleges that a conspiracy involving Defendants Bradican, Grier, Malone, Purcell, Southard, and others caused his malicious incarceration from January 29, 1971 until March 3, 1971, during which time they stole his personal property and legal documents and interfered with his access to the Courts. These allegations present issues which are apparently unrelated to various property rights here involved, and require a trial for their adjudication.

The Defendants raise the defense of judicial immunity of court-appointed receivers. The Court has taken note of those cases holding that a court-appointed receiver is clothed with judicial immunity as to acts done in obedience to the lawful mandate of the court. See Bradford Audio Corporation v. Pious, 392 F.2d 67 (2d Cir. 1968); Drexler v. Walters, 290 F.Supp. 150 (D.Minn. 1968). This issue, and the more difficult issue of whether the immunity, if any, would inure to the benefit of the co-conspirators, will be considered at trial upon the proper motion.

## II.

Count II of the complaint requests a declaratory judgment pursuant to 28 U.S.C. § 2201 that "the practice of defendants, in denying plaintiffs and other individuals not attorneys similarly situated, on account of their not being represented by counsel, the right to represent themselves constitutes a denial of the right of plaintiffs and other non-attorneys similarly situated, the equal protection of the laws under the Fourteenth Amendment . . . ." Plaintiffs allege, *inter alia*, that Defendant Bradican, in collusion with the other Defendants, "employed different arbitrary rules of procedure during trial, hearings of petitions and motions of the plaintiffs . . . ." The Court has great difficulty in understanding the thrust of Plaintiffs' claim in Count II. Apparently, they are complaining of the procedures employed by various Defendants who are lawyers against these *pro se* plaintiffs in the several court proceedings which make up the history of this action. The Declaratory Judgment Act applies only to cases of actual controversy.

> "A 'controversy' in this sense must be one that is appropriate for judicial determination . . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests . . . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character . . . . ."

Aetna Life Insurance Company v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). Whether

a particular controversy is one for which declaratory relief should be granted is to be determined on a case-by-case basis. See Maryland Cas. Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

In my view, this case does not present a proper controversy within the meaning of the Declaratory Judgment Act. Plaintiffs object to the manner in which these Defendant lawyers have handled the legal proceedings involving these *pro se* Plaintiffs. I am quite sure that the lawyers would have complaints about Plaintiffs' handling of the proceedings. Plaintiffs' claims in Count II amount to little more than a squabble. Specific relief through a decree of a conclusive character would be impossible. Objection to methods of procedure in particular cases can best be ruled upon by the court exercising jurisdiction over that particular case. This Court declines to entertain Plaintiffs' motion for declaratory judgment in Count II.

### III.

In Count III, Plaintiffs request a declaratory judgment that certain statutes are unconstitutionally vague in that they permit a state court to appoint a receiver with almost unlimited powers. The allegedly offending statutes are 17 P.S. § 281, Act of June 16, 1836, P.L. 784, § 13, and 15 P.S. § 2108, Act of May 5, 1933, P.L. 364, Art. XI, § 1108. The former statute is merely one giving to the several courts of common pleas jurisdiction over the supervision and control of corporations. By no stretch of the imagination could this jurisdictional statute be considered unconstitutional. 15 P.S. § 2108 concerns the power of the courts of common pleas to appoint a receiver in corporate liquidation proceedings. The appointment of Defendant Bradican as receiver of Scientific was not made pursuant to this statute as Scientific was not in the process of liquidation. Rather, the receiver was appointed pursuant to the general equitable powers of the court.

The Court assumes that the thrust of Count III of the complaint is a request that the appointment of a receiver with broad general powers be declared unconstitutional, and in particular, that the appointment of Defendant Bradican as receiver of Scientific be declared unconstitutional. The extraordinary remedy of receivership has long been recognized to be within the authority of a state court of equity, McDougall v. Huntingdon and Broad Top R. & C. Co., 294 Pa. 108, 143 A. 574 (1928), as well as a federal court. Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935). All courts recognize the drastic nature of receivership, and while the propriety of the appointment of a receiver may be questioned, the constitutional power of a court with jurisdiction over the matter to appoint a receiver is not subject to constitutional attack. Cf. Pennsylvania v. Williams, *supra;* Kelleam v. Maryland Casualty Co., 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899 (1941). In Pennsylvania, the appointment of a receiver is proper only under certain narrow circumstances. McDougall v. Huntingdon and Broad Top R. & C. Co., *supra.* Those circumstances were shown to the satisfaction of the court appointing Defendant Bradican, and the lower court decision to create the receivership was affirmed by the Supreme Court of Pennsylvania. 445 Pa. 595, 285 A.2d 865 (1971). The significant property interests involved in receiverships are subject to the watchful eye of the appointing court. Plaintiffs' allegations that this procedure is unconstitutional are without merit.

### IV.

In Count IV, Plaintiffs request that this Court issue a writ of error to the Court of Common Pleas for Lackawanna County requiring it to give full faith and credit to the judgment entered December 17, 1968, by the United States District Court for the Eastern District of Virginia in Hohensee v. Scientific Living, Inc., Civil 4972–A. The facts surrounding the "Virginia action" have already been noted.

**1368**

The Court is aware of no authority by which it can issue a writ of error to a state court. More importantly, on February 25, 1970, the U. S. District Court in Virginia which entered the judgment set aside the order that judgment be entered on the ground that it had been obtained by fraud perpetrated against the Court. Plaintiffs contend that full faith and credit must still be given the judgment because only the order authorizing judgment to be entered, not the judgment itself, was set aside. This contention is utterly frivolous. The circumstances surrounding the Virginia judgment were fully discussed by the Pennsylvania Supreme Court which concluded:

"Under the bizarre and shocking circumstances presented, the Virginia action can in no manner preclude determination of the issues involved in the instant litigation . . .. The institution of the Virginia action was a bold and brazen attempt by appellant, with the connivance of his sisters, to defeat the ends of justice."

Scientific Living, Inc. v. Hohensee, 440 Pa. 280, 292, 270 A.2d 216, 222 (1970).

## V.

In Count V, Plaintiffs allege that on April 9, 1970, before the appointment of the receiver, certain of the Defendants instituted criminal proceedings against the Plaintiffs for trespass and breaking and entering, and that said charges were made maliciously and without probable cause. Plaintiffs were thereafter acquitted at the alderman's level by default. Insofar as Count V relates to Plaintiff Hohensee, summary judgment must be granted against him because no "state action" is involved and because the Court has found no diversity of citizenship between Hohensee and the Defendants.

However, Count V alleges the tort of malicious prosecution as to Plaintiffs Arzoo and Tompkins, jurisdiction of which would be proper should this Court find that diversity exists between Arzoo and Tompkins and the Defendants. Therefore, summary judgment will be denied as to the malicious prosecution claims of Plaintiffs Arzoo and Tompkins subject to their proving diversity of citizenship at the trial in this case.

## VI.

In conclusion, the Court has granted summary judgment as to all of the claims of Plaintiffs except the civil rights claim of Plaintiff Hohensee in Paragraphs 35, 36, and 37 of Count I and the malicious prosecution claims of Plaintiffs Arzoo and Tompkins in Count V. The Court will hear evidence as to the citizenship of Plaintiffs Arzoo and Tompkins at the trial in this case. Since summary judgment has been granted on all claims involving Defendants First National Bank of Jermyn and Moskovitz, their participation in the case is no longer necessary. All other Defendants are still in the case by virtue of the remaining claims before the Court.

Appropriate orders have been entered.